## S99A1567. OUTDOOR ADVERTISING ASSOCIATION OF GEORGIA, INC. et al. v. GARDEN CLUB OF GEORGIA, INC. et al. S99X1568. SHACKELFORD et al. v. GARDEN CLUB OF GEORGIA, INC. et al.

### (527 SE2d 856)

THOMPSON, Justice.

In 1998, the General Assembly enacted OCGA §§ 32-6-75.1 through 32-6-75.3, governing the issuance of permits for trimming vegetation and trees on Georgia rights-of-way to facilitate the viewing of outdoor advertising signs.[1] The legislation replaced certain regulations implemented by the Department of Transportation in 1994 which were declared unconstitutional in *Garden Club of Ga. v. Shackelford*, 266 Ga. 24 (463 SE2d 470) (1995) (*"Garden Club I"*), as granting an illegal gratuity.[2]

The Garden Club of Georgia, Inc. and several of its individual members ("Garden Club") filed the present complaint for declaratory and equitable relief against the Department of Transportation and its Commissioner, Wayne Shackelford ("DOT"). The complaint alleged that the new statutes, implementing rules, and a DOT-created Manual of Guidance (Manual),[3] violate the gratuities clause, exceed the rule-making authority of the DOT under OCGA § 32-6-90, and contravene certain provisions of the Georgia Administrative Procedure Act, OCGA § 50-13-1 et seq. Outdoor Advertising Association of Georgia, Inc., and Chancellor Media Whiteco Outdoor Corporation ("Advertisers") were granted permission to intervene as party defendants.

During the pendency of the litigation, the superior court granted Garden Club's motion for an interlocutory injunction prohibiting the DOT from issuing tree cutting permits under the challenged law; it also denied a motion brought by the DOT to disqualify Garden Club's counsel, former Attorney General Michael Bowers, his co-counsel, Mark G. Trigg, and the law firm of Meadows, Ichter, and Trigg, P. C.

In Case No. S99A1567, Advertisers appeal from the grant of the interlocutory injunction. In Case No. S99X1568, the DOT cross-appeals from the denial of its disqualification motion. Finding no abuse of discretion on the part of the trial court, we affirm both rulings.

---

[1] The legislation became effective on January 1, 1999, as a result of ratification of Constitutional Amendment 4 at the November 3, 1998 General Election.

[2] See Art. III, Sec. VI, Par. VI, Georgia Constitution (1983).

[3] The Manual, entitled "Vegetation Management at Outdoor Advertising Signs," established a program to permit trimming and removal of trees and other vegetation in front of outdoor advertising signs on State highway rights-of-way.

*Case No. S99A1567*

1.

An interlocutory injunction "is a device to keep the parties in order to prevent one from hurting the other whilst their respective rights are under adjudication. . . . There must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy." *Price v. Empire Land Co.*, 218 Ga. 80, 85 (126 SE2d 626) (1962). The trial court has broad discretion to decide whether to grant or deny a request for an interlocutory injunction (OCGA § 9-5-8; *Avnet, Inc. v. Wyle Laboratories*, 263 Ga. 615 (1) (437 SE2d 302) (1993)), and the appellate courts will not disturb the trial court's exercise of its discretion unless a manifest abuse of discretion is shown or there was no evidence on which to base the ruling. *Kennedy v. W. M. Sheppard Lumber Co.*, 261 Ga. 145 (1) (401 SE2d 515) (1991).

*Chambers v. Peach County*, 268 Ga. 672, 673 (492 SE2d 191) (1997).
The superior court may issue an interlocutory injunction to maintain the status quo until a final hearing if, by balancing the relative equities of the parties, it would appear that the equities favor the party seeking the injunction. *Lee v. Environmental Pest & Termite Control*, 271 Ga. 371 (516 SE2d 76) (1999); *Ledbetter Brothers v. Floyd County*, 237 Ga. 22 (226 SE2d 730) (1976); *Wilson v. Sermons*, 236 Ga. 400 (223 SE2d 816) (1976).
The superior court weighed the equities in favor of the Garden Club, concluding that the DOT and intervenors would suffer no substantial harm from the granting of the injunction and that the greater harm would result from the cutting of trees. Finding no manifest abuse of discretion in that ruling, we affirm the grant of an interlocutory injunction enjoining the DOT from issuing tree cutting permits under the challenged law.

*Case No. S99X1568*

2. The Garden Club and several of its individual members were plaintiffs in the *Garden Club I* litigation brought against the DOT and DOT Commissioner Shackelford. During those proceedings, Bowers served as the Attorney General of Georgia, and his office was counsel of record for the DOT. On that basis, the DOT seeks to disqualify Bowers and members of his law firm as counsel for the Garden Club in the present action. It was alleged in the disqualification motion that Bowers' current representation concerns a matter in

which he had substantial responsibility while Attorney General; and that his representation violates Code of Professional Responsibility 3-109 (Canon 9), Ethical Consideration (EC) 9-3; Directory Rule (DR) 9-101 (B); and Standard 69 of Georgia Bar Rule 4-102 (d). These claims are likewise asserted on appeal.

(a) Code of Responsibility of the State Bar of Georgia, Rule 3-109 (Canon 9), EC 9-3, provides:

> After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists.

Similarly, DR 9-101 (B) provides: "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

Under this standard, we must determine whether Bowers has accepted employment in a "matter" in which he had "substantial responsibility" while serving as Attorney General. Both elements must be present in determining whether disqualification is demanded.

We are guided by a definition of "matter" as formulated by The American Bar Association Committee on Ethics and Professional Responsibility in interpreting the identical ABA Disciplinary Rule DR 9-101 (B):

> Although a precise definition of "matter" as used in the Disciplinary Rule is difficult to formulate, the term seems to contemplate a discrete and isolatable transaction or set of transactions between identifiable parties. . . . The same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter. By contrast, work as a government employee in drafting, enforcing or interpreting government or agency procedures, regulations, or laws, or in briefing abstract principles of law, does not disqualify the lawyer under DR 9-101 (B) from subsequent private employment involving the same regulations, procedures, or points of law; the same "matter" is not involved because there is lacking the discrete, identifiable transactions or conduct involving a particular situation and specific parties.

ABA Formal Opinion 342 (1975).

The ABA Committee construed the term "substantial responsibility" so as not to "unduly hinder the government in recruiting law-

yers" nor interfere with "the right of litigants to employ technically skilled and trained former government lawyers." Consistent with those policy considerations, it proposed that:

> "[S]ubstantial responsibility" envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question. Thus, being the chief official in some vast office or organization does not ipso facto give that government official or employee the "substantial responsibility" contemplated by the rule in regard to all the minutiae of facts lodged within that office. Yet it is not necessary that the public employee or official shall have personally or in a substantial manner investigated or passed upon the particular matter, for it is sufficient that he had such a heavy responsibility for the matter in question that it is unlikely he did not become personally and substantially involved in the investigative or deliberative processes regarding that matter.

ABA Formal Opinion 342 (1975).

The evidence of record established that Bowers served as Attorney General of Georgia from 1981 until his resignation from office on May 31, 1997. When the *Garden Club I* litigation was filed in 1995, the office of the Attorney General entered an appearance as counsel for the DOT. Then Deputy Attorney General George P. Shingler had primary responsibility for the case, including: investigation, research, strategy, supervision of other lawyers in the department, communications with the client and with opposing counsel, and presentation of the arguments. Shingler never discussed the case with Bowers, and Bowers made no court appearances in connection with the litigation.

To establish Bowers' involvement in the Garden Club matter, the DOT relies on the following: In September 1981, in response to a request from the Commissioner of the DOT, Bowers issued an official opinion to the effect that the DOT is authorized to adopt rules governing the issuance of permits for trimming trees and vegetation on its rights-of-way to facilitate the viewing of billboards. See 1981 Op. Atty Gen. 179. In 1991, in response to a request for advice from the Chairman of the DOT Board, Bowers opined by letter that certain proposed regulations allowing for the removal of trees and vegetation could be problematical for the DOT. In 1993, Bowers responded to an inquiry by a state legislator concerning whether the DOT's actions in trimming trees in front of privately owned billboards along state highways constitutes an illegal gratuity; he appended his 1981 opinion and 1991 letter. In 1994, Bowers received a fax from Jaydee Ager, a member of the Garden Club of Georgia and a named plaintiff in

both lawsuits, expressing her dismay concerning a DOT tree-trimming demonstration. Bowers referred the correspondence to Shingler for his reply. The final document on which the DOT relies is a March 14, 1997 letter from Bowers to then Lieutenant Governor Pierre Howard expressing the opinion that an early draft version of Senate Bill 337, the predecessor bill to the legislation now under challenge, suffers from the same flaws as the regulations which were declared unconstitutional in *Garden Club I.*

"The burden is upon the party seeking disqualification to show that the matters embraced within the pending suit are substantially related to the matters or the cause of action" involved in the previous representation. *Dismuke v. C & S Trust Co.*, 261 Ga. 525, 527 (3) (407 SE2d 739) (1991). The evidence showed that from 1981 to 1993, Bowers offered legal interpretations concerning the proposed 1994 regulations and procedures for the issuance of permits for vegetation control. In performing these functions, he was merely carrying out the statutory duties required of the Attorney General. All of this occurred prior to the implementation of the 1994 rules, and prior to the complaint in *Garden Club I.* And these proffered opinions did not pertain to the legislation challenged herein. In the 1997 communication to Pierre Howard, Bowers merely commented on a draft version of the bill underlying the present legislation. In fact, the final legislation was not even enacted until three months after Bowers resigned from office. The foregoing does not constitute evidence of Bowers' participation in the same "matter" as is involved in the present litigation.

Nor does the evidence of record establish that Bowers had "substantial responsibility" for the *Garden Club I* litigation or related issues while he served as Attorney General. Shingler's unrefuted affidavit shows that Bowers was not personally and substantially involved in the deliberative processes regarding those matters. Likewise, the facsimile communication from Ager and referral of the matter to Shingler did not constitute evidence of substantial responsibility. At most it demonstrates Bowers' mere perfunctory involvement in the matter in question.

Were we to accept the DOT's argument that Bowers, as a constitutional officer, trustee, and servant of the citizens of Georgia, should be treated differently than other public officers, we would be required to disqualify him from representation in some 16,000 cases in which he participated during his tenure as Attorney General. This result would deprive untold numbers of potential litigants of the right to counsel of their choice and would unduly penalize the public official for his service to the State.

Accordingly, disqualification was not mandated under State Bar Rules and Regulations 3-109, Canon 9, EC 9-3 or DR 9-101 (B).

(b) Standard 69 of Rule 4-102 (d) of the State Bar of Georgia, provides:

> A lawyer shall not represent a client whose interests are adverse to the interests of a former client . . . unless he has obtained a written consent of the former client after full disclosure. The term "client" as used in this Standard shall not include a public agency or public officer or employee when represented by a lawyer who is a full time public official.

Since the DOT is a public agency and Bowers was a full-time public official at the time of the *Garden Club I* litigation, he is not disqualified under Standard 69 from representing the Garden Club in the present matter.

(c) The DOT further asserts that Bowers should be disqualified under the doctrine in *Crawford W. Long Mem. Hosp. &c. v. Yerby*, 258 Ga. 720 (373 SE2d 749) (1988).

In *Yerby*, the challenged attorney and his law firm had defended Crawford Long Hospital in numerous malpractice cases. After the lawyer left that firm, he represented a client in a medical malpractice action against Crawford Long. It was established that the cause of action had accrued while the former representation was ongoing. Consequently, the lawyer was in a position to acquire a wide range of knowledge concerning the hospital's policies and practices during that time. This Court held that an impermissible appearance of impropriety is created when a lawyer "represent[s] a client against a former client in an action that is of the same general subject matter, and grows out of an event that occurred during the time of such representation." Id. at 722.

The present action grows out of the enactment of the new legislation, an event that occurred after Bowers left office. Accordingly, Bowers' involvement while Attorney General did not disqualify him under *Yerby*. See also *Stoddard v. Bd. of Tax Assessors*, 173 Ga. App. 467 (326 SE2d 827) (1985) (absent some evidence of harm, the court will not find an appearance of impropriety which will outweigh a litigant's interest in representation by counsel of choice).

"[T]he right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution." *Blumenfeld v. Borenstein*, 247 Ga. 406, 408 (276 SE2d 607) (1981). In reviewing the trial court's ruling, an abuse of discretion standard applies. Id. Under the circumstances of this case, we cannot say that the denial of the motion to disqualify Garden Club's counsel constituted an abuse of the court's discretion.

*Judgments affirmed. In Case No. S99A1567, all the Justices concur, except Hines, J., not participating. In Case No. S99X1568, all the*

*Justices concur, except Benham, C. J., who dissents, and Hines, J., not participating.*

BENHAM, Chief Justice, concurring in part and dissenting in part.

Though I concur with the majority with respect to the grant of the interlocutory injunction enjoining the DOT, I respectfully dissent to the majority's opinion regarding the disqualification issue because I believe that former Attorney General Michael Bowers' representation of the Garden Club in this matter raises the appearance of impropriety and undermines public trust and confidence in our government officials who are lawyers. Disqualification should occur because representation of the Garden Club by the former Attorney General violates the Code of Professional Responsibility of the State Bar of Georgia, the doctrine articulated in *Crawford W. Long Mem. Hosp. &c. v. Yerby*, 258 Ga. 720 (3) (373 SE2d 749) (1988), and because failure to disqualify him diminishes the respect afforded the office of the Attorney General of Georgia.

The representation here of the Garden Club raises the appearance of professional impropriety, which a lawyer should avoid under Canon 9 of the Canon of Ethics of the Code of Professional Responsibility of the State Bar of Georgia. Because the former Attorney General's current representation of the Garden Club is significantly related to the previous litigation concerning the cutting of trees and vegetation on rights-of-way in which he had substantial responsibility, he should be disqualified. His conduct also violates Ethical Consideration (EC) 9-3 and Directory Rule (DR) 9-101 (B) of the Code of Professional Responsibility of the State Bar of Georgia.

EC 9-3 provides,

> After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists.

The majority contends disqualification is inappropriate in this case because the present litigation is not the same "matter" that was at issue at the time Bowers was Attorney General. The majority cites language from the American Bar Association Committee on Ethics and Professional Responsibility in interpreting the word "matter" as it appears in EC 9-3 and DR 9-101 (B) in support of this argument.

I do not believe this definition of "matter" excludes Bowers' work on the rights-of-way litigation during his tenure as Attorney General and his subsequent representation of the Garden Club on the same subject. The ABA describes a "matter" as, "The same issue of fact involving the same parties and the same situation or conduct. . . ."

At issue in the litigation that ensued during Bowers' tenure as Attorney General and in the present litigation is the trimming of vegetation and trees on Georgia's highway rights-of-way in front of private signs. The same parties are involved in both lawsuits. There is not a lack of "discrete identifiable transactions or conduct involving a particular situation and specific parties." ABA Formal Opinion 342 (1975).

The majority also contends disqualification is inappropriate because the former Attorney General did not have "substantial responsibility" in the Garden Club litigation. I do not agree with the majority's characterization of his involvement in the Garden Club litigation, which it describes as "perfunctory." This portrayal de-emphasizes the role of the Office of the Attorney General by relegating his status to that of a mere nominal member of the office. The former Attorney General was ultimately accountable for the disposition of the litigation, despite the fact that one of his Assistant Attorneys General was necessarily more intimately involved with the details of the litigation. As stated by the ABA:

> [I]t is not necessary that the public employee or official shall have personally or in a substantial manner investigated or passed upon the particular matter, for it is sufficient that he had such a heavy responsibility for the matter in question that it is unlikely he did not become personally and substantially involved in the investigative or deliberative processes regarding that matter. With a responsibility so strong and compelling that he probably became involved in the investigative or decisional processes, a lawyer upon leaving the government service should not represent another in regard to that matter. To do so would be akin to switching sides, might jeopardize confidential government information, and gives the appearance of professional impropriety in that accepting subsequent employment regarding that same matter creates a suspicion that the lawyer conducted his governmental work in a way to facilitate his own future employment in that matter.

Id.

Additionally, disqualification should occur under the doctrine articulated in *Crawford W. Long Mem. Hosp. &c. v. Yerby*, 258 Ga. 720 (3), which prohibits an attorney from "representing a client against a former client in an action that is of the same general subject matter, and grows out of an event that occurred *during the time* of such representation." The majority notes that the present litigation does not arise out of the same general subject matter as the litigation in which the former Attorney General was involved because

the new legislation was enacted after he left office. However, I believe the new legislation involves the same subject and is very similar to the legislation that was in force when the former Attorney General was in office, rendering the *Yerby* doctrine applicable to him.

Finally, I believe disqualification is particularly warranted in this case because of the lofty status and high visibility of the Attorney General, which increases the risk of public cynicism with respect to the integrity of government officials. EC 9-6 states, "Every lawyer owes a solemn duty to . . . strive to avoid not only professional impropriety, but also the appearance of impropriety." The possible negative inferences that can be drawn from the former Attorney General's participation in this matter include the appearance of "switching sides" and the possibility that confidential governmental information may be used against the government. Id.

For the reasons stated above, I would conclude that the trial court's denial of the motion to disqualify the former Attorney General constituted an abuse of discretion. Accordingly, I dissent.

DECIDED MARCH 6, 2000.

*Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling, Groover & Childs, Denmark Groover, Jr., Duke R. Groover,* for Outdoor Advertising et al.

*Meadows, Ichter & Trigg, Mark G. Trigg, Michael J. Bowers,* for Garden Club of Georgia.

*Thurbert E. Baker, Attorney General, Ray O. Lerer, Senior Assistant Attorney General, Cathy Cox-Brakefield, Assistant Attorney General,* for Shackelford and the Department of Transportation.