S10A0533, S10A0534, S10A0535. REGISTE v. THE STATE
(three cases).
(697 SE2d 804)

NAHMIAS, Justice.

The trial court granted the State's motion to disqualify former assistant district attorney (ADA) Stacey S. Jackson from representing the defendant, Michael Jason Registe, in a murder case in which Jackson had signed search warrant applications to secure evidence against Registe, as well as in two other criminal cases against Registe the facts of which the State intends to introduce as similar transaction evidence in the murder trial. We granted Registe's application for interlocutory appeal of the three cases. As explained below, the record is not clear on the extent of the confidential information about the murder case to which Jackson was exposed while he was an ADA, which might require disqualification even if Jackson took no court-related action in the case. In any event, however, disqualification was clearly appropriate based on the ethical rules that prohibit an attorney from participating on both sides of the same case. Accordingly, the trial court did not abuse its discretion in disqualifying Jackson from representing Registe in these cases.

1. In August 2000, Jackson was hired as an ADA by the District Attorney for the Chattahoochee Judicial Circuit. He worked in the Muscogee County office. On September 5, 2005, Registe allegedly committed a car theft and seven related crimes (the car theft case). On November 23, 2005, Registe allegedly committed aggravated assault by shooting a man several times, as well as other crimes involving illegal drugs and firearms (the aggravated assault case). Three months later, on February 27, 2006, the State charged Registe by accusation in the car theft case.

By 2007, Jackson had been promoted to Senior ADA and was in charge of the six or so attorneys on the DA's Division I trial team. On July 20, 2007, two people were shot and killed in connection with an armed robbery and an attempted armed robbery. Registe was suspected to be the perpetrator. The Columbus police were unable to locate him, and it was eventually determined that he had fled the country on the day after the murders, possibly with his sister's assistance.

Jackson appears to have had no court-related participation in Registe's car theft and aggravated assault cases. However, in January 2008, Jackson met twice with officials from the United States

Marshals Service regarding federal assistance in locating Registe for prosecution in the murder case. As a result of these discussions, Jackson signed three substantially identical search warrant applications for presentation to the Muscogee County Superior Court to obtain records related to three telephone numbers linked to Registe and his sister. The applications, which were signed by Jackson alone in his capacity as an ADA, stated as follows:

> Applicant certifies that the information sought is relevant and material to an ongoing criminal investigation to locate fugitive Michael Registe who is wanted by the Columbus Police Department in Muscogee County, Georgia for Murder (two counts) in Violation of 16-5-1 Ga. Code. It is believed that the requested telephone records pertaining to telephone number(s) 706-[xxx-xxxx] will provide leads which will aid in locating and apprehending the fugitive.

(Telephone numbers redacted.) The United States Marshals presented the applications to the Superior Court, and the search warrants were issued, leading to the seizure of telephone records.

Several months later, at the end of July, Jackson left the DA's office for private practice. About a month after that, on August 26, 2008, the Muscogee County grand jury indicted Registe for the 2007 double homicide and related crimes. The following day, on August 27, 2008, Registe was arrested in St. Maarten, Netherlands Antilles. Two weeks later, on September 9, 2008, the grand jury indicted Registe in the 2005 aggravated assault case.

ADAs from the small team that Jackson had recently supervised handled both indictments. About a week after the second indictment, Jackson spoke with Chris Samra, an investigator for the DA's office whom Jackson had also supervised when he worked there. They discussed Registe's arrest, and Samra asked Jackson if he would be representing Registe as defense counsel. Samra testified at the hearing on the motion to disqualify that Jackson responded "no" and said "he couldn't because he had done some work on the case."

Ten months later, in July 2009, Registe was returned to Muscogee County to face trial in the double murder and two other cases against him. On August 4, 2009, Jackson filed a notice of appearance as defense counsel for Registe. The State promptly filed a motion to disqualify Jackson from representing Registe in the murder case because of his work on the case while in the DA's office. The State later sought to disqualify Jackson in the car theft and aggravated assault cases as well, because it intended to offer them as similar transaction evidence in the murder case.

After holding an evidentiary hearing, the trial court entered an

order on September 25, 2009, disqualifying Jackson in all three cases (which have different case numbers, as their appeals do in this Court). The court based its ruling on the Georgia Rules of Professional Conduct for lawyers, as well as case law from this Court and others regarding the ethical obligations of an attorney who leaves public service and enters private practice. The trial court concluded that Registe's constitutional right to the retained counsel of his choice did not allow him to retain Jackson, due to Jackson's conflict of interest, the appearance of impropriety from his involvement on both sides of the murder case, and the need to protect public confidence in the integrity of the judicial system. The court acknowledged that Jackson's direct participation was limited to the murder case but reasoned that disqualification was proper in the other two cases because the State was seeking to introduce their evidence as similar transactions in the murder case. The trial court granted Registe's motion for a certificate of immediate review, and this Court then granted his application to appeal.

2. One element of the right to counsel in criminal prosecutions, as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section I, Paragraph XIV of the Georgia Constitution of 1983, is the right of a defendant who does not require appointed counsel to choose who will represent him. See *United States v. Gonzalez-Lopez*, 548 U. S. 140, 144 (126 SC 2557, 165 LE2d 409) (2006); *Shaw v. State*, 251 Ga. 109, 111 (303 SE2d 448) (1983). The right to choose one's counsel is not unqualified, however. As relevant to this case, it is well-established that a defendant does not have a right to be represented by an attorney who is ethically prohibited from doing so, most commonly due to a conflict of interest. See *Gonzalez-Lopez*, 548 U. S. at 151-152; *Lynd v. State*, 262 Ga. 58, 62-63 (414 SE2d 5) (1992). The trial court's decision on whether an ethical requirement bars a lawyer from representing a defendant is reviewed on appeal for abuse of discretion. See *Redd v. State*, 264 Ga. 399, 400 (444 SE2d 776) (1994). See also *Cardinal Robotics, Inc. v. Moody*, 287 Ga. 18 (694 SE2d 346) (2010) (reviewing for abuse of discretion a trial court's ruling declining to disqualify retained counsel in a civil case). The defendant's waiver of his attorney's conflict of interest does not always cure the problem, because "courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U. S. 153, 160 (108 SC 1692, 100 LE2d 140) (1988).

3. The Georgia Rules of Professional Conduct set out the minimum ethical standards that attorneys practicing in Georgia must follow. See generally Bar Rules 4-101 and 4-102. At least four

Rules are implicated in this appeal. Rule 1.6 requires a lawyer to maintain in confidence all information gained in the professional relationship with a client and specifies the limited circumstances under which that information may or must be revealed. Rule 1.7 sets out the general rule applicable to conflicts of interest. Rule 1.9 provides specific direction on the application of Rule 1.7 in the context of a conflict of interest between present and former clients. And Rule 1.11 codifies the ethical obligations of an attorney in successive government and private practice. To be ethically appropriate, Jackson's representation of Registe must comply with all of these rules. See Rule 1.11 cmt. [2] (confirming that Rule 1.11 does not displace the requirements of Rules 1.7 and 1.9 in the context of successive government and private practice). While the application of some of these rules may not be dispositive on the current record, other provisions are, and together the rules clearly support the trial court's disqualification order. We address each rule in turn.

(a) *Rule 1.6 — Confidentiality of Information.* Rule 1.6 prohibits lawyers from disclosing all information gained during the representation of a client except under limited circumstances. Subsection (a) provides as follows:

> A lawyer shall maintain in confidence all information gained in the professional relationship with a client, including information which the client has requested to be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client, unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, or are required by these rules or other law, or by order of the Court.

Subsection (e) confirms that "[t]he duty of confidentiality shall continue after the client-lawyer relationship has terminated."[1]

As a practical matter, it seems doubtful that an ADA in a relatively small office would not have been exposed to any confidential information about a high-profile double-murder case in his

---

[1] Rule 1.11 (b) contains a similar confidentiality provision. It states that "[e]xcept as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person." The phrase "confidential government information" means "information which has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public." Rule 1.11 (e).

county, particularly where the ADA was the supervisor of the small trial unit that indicted the murder case (and the aggravated assault case) just a few weeks after he left the office and even more so where the ADA personally certified to a court that certain records would be "relevant and material" to the "ongoing criminal investigation" to locate the murder suspect. If Jackson acquired such confidential information, that could have sufficed to disqualify him. See Rule 1.6 (a), (e).

Registe argues that any potential prejudice to the State is obviated by the prosecution's obligation to disclose all material exculpatory evidence to Registe pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). The category of information protected from disclosure by Rule 1.6, however, is far broader than the category of material exculpatory information governed by *Brady*. This is so because "much of what a Government attorney learns while investigating a case does not become part of the prosecution's files," and "the fact that some impeachment material may be available . . . under *Brady* . . . minimizes but does not eradicate the unfair advantage that a [defendant] secures through [the former prosecutor's] representation." *United States v. Ostrer*, 597 F2d 337, 340 (2nd Cir. 1979).

The trial court made only limited findings on the confidential information issue, stating that "[i]t has not been shown that Jackson acquired no knowledge of the cases" during his employment as an ADA and citing *Clifton v. State*, 187 Ga. 502, 505 (2 SE2d 102) (1939). In *Clifton*, which was decided before the establishment of the Georgia Rules of Professional Conduct, this Court held that where

> counsel who proposes to represent one of the parties thereto has previously been in the employment of the opposing party in the same or a related matter, it would be serious error to permit him to continue in the case unless it should appear that he took *no action* in the case while counsel for the opposing party, and it was clearly shown that he did not acquire, by reason of such employment, *any knowledge or information* concerning the case; and even in these circumstances the court might in its discretion disqualify him, looking to the full administration of justice.

Id. (emphasis supplied).

Because the record is not fully developed on this issue, we need not rely heavily on Rule 1.6 to decide these cases. Jackson did not merely work in the office that handled the prosecution or merely supervise the ADAs handling the case, potentially acquiring confidential information as a result. Instead, he personally filed an

application in the murder case on behalf of the State, and as a result, other rules clearly mandate his disqualification.

(b) *Rule 1.7 — Conflict of Interest: General Rule.* Rule 1.7 (a) states that "[a] lawyer shall not represent or continue to represent a client if there is a significant risk that . . . the lawyer's duties to . . . a former client . . . will materially and adversely affect the representation of the client." Sometimes such a conflict is waivable, but only if *both* the current and former clients consent after consultation with the attorney, have received in writing reasonable and adequate information about the material risks of the representation, and have been given the opportunity to consult with independent counsel. See Rule 1.7 (b) (1)-(3). A conflict is not waivable, even if both clients would consent to it, if the representation "is prohibited by law or these rules," "includes the *assertion of a claim by one client against another client* represented by the lawyer *in the same or substantially related proceeding,*" or "involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." Rule 1.7 (c) (1)-(3) (emphasis supplied). The official comments recognize that conflicts may be more difficult to assess outside the litigation context. See Rule 1.7 cmt. [11]. It is clear, however, that the rule "prohibits representation of opposing parties" in a litigation context. Rule 1.7 cmt. [7].

Rule 1.7 does not permit Jackson to represent Registe in the murder case or in the two other cases the State plans to seek to introduce as similar transaction evidence at the murder trial. The trial court found that the telephone records obtained with the search warrants applied for by Jackson as an ADA were potentially relevant and probative to the charges against Registe and therefore could put Jackson in the untenable position of either attacking the warrants he obtained while working on the murder case as an attorney for the State, or sacrificing a potentially fruitful attack on the government's case on behalf of his present client. Neither choice would be professionally acceptable.

Jackson's representation of Registe in the murder case violates Rule 1.7 because it creates a "significant risk that . . . the lawyer's duties to . . . a former client . . . will materially and adversely affect the representation" of his present client. Rule 1.7 (a). Moreover, because the representation "includes the assertion of a claim by one client against another client . . . in the same . . . proceeding," Jackson's conflict cannot be waived, even if the State and the defendant both wanted to waive it after being fully informed, in writing, of the risks — something the State has explicitly declined to do. See Rule 1.7 (c) (2).

(c) *Rule 1.9 — Conflict of Interest: Former Client.* Jackson's representation of Registe in the murder case is even more clearly barred by Rule 1.9, which prohibits "[a] lawyer who has formerly represented a client in a matter" from thereafter representing another person "in the same or a substantially related matter" if "that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Rule 1.9 (a). Registe's interests are obviously "materially adverse" to the interests of the State in the three criminal cases the State is prosecuting against him. And the murder case is exactly "the same . . . matter" in which Jackson formerly and formally represented the State in an application submitted to the trial court.

The first official comment to Rule 1.9 explains that "[a] lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction." Rule 1.9 cmt. [1]. If subsequent *civil* representation against the government regarding the same matter is so clearly improper that it is used to illustrate the conduct prohibited by the rule, then subsequent representation against the government in the *criminal* case itself is even more clearly prohibited. Jackson argues that he did not *physically* appear in court on both sides of this case. See *Love v. State*, 202 Ga. App. 889 (416 SE2d 99) (1992) (affirming disqualification of defense law firm after former prosecutor who had represented the State at the defendant's preliminary hearing joined the firm). But Jackson took action in court by filing an application to obtain search warrants, and that is enough. See *Clifton*, 187 Ga. at 505 ("[I]t would be serious error to permit [counsel] to continue in the case, unless it should appear that he took *no action* in the case while counsel for the opposing party . . . ." (emphasis supplied)).

The second official comment to Rule 1.9 recognizes that, while an attorney's involvement may vary from case to case, "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Rule 1.9 cmt. [2]. Jackson's involvement in the murder case was not merely in an advisory, supervisory, or managerial role; it was direct and substantive, as he personally applied to the court for search warrants to obtain evidence against his current client. As the trial court correctly concluded, Jackson's successive representation of the State and then the defendant in the same case was undeniably "a changing of sides in the matter in question."

The principles embodied in Rule 1.9 not only protect former clients, but are essential to maintaining public confidence in the

integrity of our adversarial system of criminal justice. We recognized this point in a case decided shortly after this Court was created, in a passage recited by the trial court that bears repetition here.

> The administration of the law should be free from all temptation and suspicion, so far as human agency is capable of accomplishing that object; and in our judgment, *public policy* most emphatically demands, that a Solicitor General who has been employed by the State, to prosecute defendants for a violation of her laws, for the compensation affixed by law, should not be allowed to defend such defendants from the charge contained in the indictment, after the expiration of his term of office, for a compensation to be paid by them for that purpose. Such a practice will have a tendency to greatly embarrass the administration of the Criminal Law; for, as the term of the office of Solicitor General is about to expire, prosecutors and others, who may be intrusted to prosecute offenders, will necessarily be restrained from communicating freely with the State's counsel, when he may be employed at the next term of the Court, to defend the indicted culprit.

*Gaulden v. State*, 11 Ga. 47, 50-51 (1852) (emphasis in original). We also explained why disqualification is required even if the former prosecutor discloses to the defendant no information obtained while working for the State.

> It is no sufficient answer to say, that the law will not allow him to disclose any fact which may have been communicated to him as the counsel for the State, to her prejudice. If he *knows* the vulnerable points in the case, derived by his official connexion with it, there are many ways by which those points might be made available to the defendant on his trial, by his counsel, besides disclosing them as a witness. If he has knowledge of facts, derived from his official connexion with the prosecution, which will operate to the prejudice of the State, and he is permitted to act as counsel for the defendant, that knowledge will be made available in the defence . . . .

Id. at 51 (emphasis in original).

Because Jackson did not take action on both sides of the car theft and aggravated assault cases, his representation of Registe in those cases is not as clearly forbidden. However, Rule 1.9 (a) bars representation of adverse clients not only in "the same . . . matter," but

also in any "substantially related matter." The fact that the State plans to offer evidence of the two other cases in the murder case as similar transactions is sufficient to make them "substantially related" matters. We therefore cannot say that the trial court abused its discretion in also disqualifying Jackson in those two cases.

(d) *Rule 1.11 — Successive Government and Private Employment*. Rule 1.11 spells out the minimum ethical duties that attorneys who leave government service for private practice, or vice versa, owe to their present and former clients. As relevant here, it states as follows: "Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government entity consents after consultation. . . ." Rule 1.11 (a).

Registe argues that whether he "personally and substantially" participated in the murder case as an ADA is unclear in the circumstances presented, citing *Outdoor Advertising Assn. of Ga. v. Garden Club of Ga., Inc.*, 272 Ga. 146 (527 SE2d 856) (2000), and the 1975 formal opinion by the American Bar Association we relied on in that case that discussed the meaning of "substantial responsibility" in an earlier model rule on successive government and private practice. See id. at 148-149. The "personal[ ] and substantial[ ]" participation language may indeed be difficult to apply where the lawyer in question was " 'the chief official in some vast office or organization,' " because that status " 'does not ipso facto give that government official or employee the "substantial responsibility" contemplated by the rule in regard to all the minutiae of facts lodged within that office.' " *Outdoor Advertising Assn.*, id. at 149.

The term is not hard to apply, however, where a prosecutor personally applied on behalf of the State for three criminal search warrants and certified as an officer of the court that the warrants were justified because they were "relevant and material" to the State's "ongoing criminal investigation" to locate a fugitive wanted for murder and that the requested information would "provide leads which will aid in locating and apprehending the fugitive." We give little credence to the argument that Jackson signed the warrants without reading and understanding them or that he had no actual basis for the representations he made to the trial court, which itself would raise serious ethical concerns. See Rule 3.3 (a) (1) ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal. . . ."). Moreover, the testimony at the disqualification hearing showed that shortly after Jackson left the DA's office, he told an investigator there that he could not represent Registe in the murder case "because he had done some work on the case." In any event, even if Jackson could somehow circumnavigate Rule 1.11,

the specific terms of Rules 1.7 and 1.9 required his disqualification.

(e) *Conclusion.* In sum, Jackson's representation of Registe in these cases was clearly prohibited by Rules 1.7 and 1.9 of the Rules of Professional Conduct for Georgia lawyers, and Rules 1.6 and 1.11 further support that conclusion. Consequently, the trial court acted well within its discretion in disqualifying Jackson from representing Registe in the three cases.

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 12, 2010.

*Hagler & Hyles, Richard C. Hagler, Stacey S. Jackson, Amy C. Walters,* for appellant.

*Thurbert E. Baker, Attorney General, Laura J. Murphee, Assistant Attorney General,* for appellee.