## A89A2114. FRAZIER v. THE STATE.
(393 SE2d 262)

BEASLEY, Judge.

Frazier was convicted of child molestation, OCGA § 16-6-4 (a), for engaging in sexual intercourse with his seven-year-old daughter.

1. His first enumeration is governed by the directive in *Mills v. State*, 137 Ga. App. 305, 306 (2) (223 SE2d 498) (1976): " 'In examining a prospective juror, counsel for the accused should not ask technical legal questions in regard to the presumption of innocence [or the State's burden of proof], but should confine his questions to those which may illustrate any prejudice of the juror against the accused, or any interest of the juror in the cause.' [Cit.]" The trial court did not abuse its discretion in refusing to permit Frazier's counsel to voir dire prospective jurors on whether or not they could "follow two basic rules of law that apply in every case, the presumption of innocence and the duty to not find the defendant guilty unless they believe his guilt beyond a reasonable doubt. . . ."

2. Contrary to appellant's position, a review of the evidence including videotapes of March 3 and July 10, 1987, shows that it was sufficient for any rational trier of fact to conclude that Frazier was guilty of the alleged child molestation beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

During the 1986-1987 school year, the child lived in the home of her grandmother and step-grandfather, Fields. Her father, Frazier, also resided there in October and November 1986.

Teacher's aide Farmer noticed that the girl appeared unkempt, was often aggressive and nervous, and sometimes did not feel like working. In January 1987, upon inquiry by Farmer, the child disclosed that she was not feeling well because her "PaPa" (step-grandfather) had "bothered" her the night before. (Fields was tried as a co-defendant and convicted of molestation. His convictions were affirmed on appeal. *Fields v. State*, 194 Ga. App. 149 (390 SE2d 71) (1990)). A few days later, the child disclosed that she had been "bothered" again by Fields. Farmer alerted the child's teacher, Collins.

In February, the child appeared to be ill with a fever and once again told Farmer that Fields had bothered her the night before, indicating that he had cursed at her, pulled her pants down and felt between her legs. The child also related that Fields had been "tickling" her and that such conduct was supposed to be a secret. Farmer alerted Collins who in turn alerted the school principal. The child again related the touching by Fields and pointed to her front between

her legs. Walden, of the county Department of Family & Children Services, was contacted.

During an interview with the child, she showed through the use of anatomically correct dolls that she had been touched between the legs by Fields and said she had related the conduct to her grandmother. She also stated that Fields often slept with her in the same bed until her grandmother returned from work. The child was placed in foster care by emergency order. On March 3, a videotape was made of Walden's interview of the child.

Walden referred the child to child psychologist Jordan on March 17. When questioned by Jordan concerning Fields, the child became visibly upset and exhibited behavioral characteristics deemed by Jordan to be common for a sexually abused child. A formal therapy program with Jordan was begun in June.

In July, Walden of DFACS received a call from the child's foster parent, Adams, informing her that the child had stated she had sexual intercourse with Frazier and Fields. As a result, a second videotape interview was conducted. Both were viewed by the jury.

Psychologist Jordan testified that, when interviewed in mid-July, the child related that her dad had called her in, told her to get a towel and go to the bedroom and get undressed. She stated, "He played with my private part. He put things in me. It hurt." When asked what happened when her father did that, the child got on the floor and demonstrated a bouncing with her pelvic area. She stated that she told her grandmother what happened, told her father not to do it again, and that Frazier stated he would if he wanted to. When asked what the towel had been for, she said it was put over her face. Jordan brought Walden in and had the child repeat the incident. This time the child added that Fields had done the same thing to her, after her father. She related that Fields was outside with her grandmother cutting wood and then came inside into Frazier's room. She stated Frazier had finished "f------" her and then Fields did it, too. She described this by lying on the floor and demonstrating, with her legs spread. She stated that "some red stuff," blood, came out and she showed her grandmother. She also told Jordan she cried when both men kissed her lips.

Jordan testified that the detail with which the child was able to describe the sexual activities with Frazier and Fields was far beyond the normal knowledge of a child her age. He explained how the child's behavioral characteristics were consistent with the child sexual abuse accommodation syndrome.

At trial, the child was called as the court's witness pursuant to *Sosebee v. State*, 257 Ga. 298 (357 SE2d 562) (1987), and testified similarly.

3. Appellant contends the court erred in granting the State's mo-

tion for joinder and in failing to grant his motion for severance, which was mandatory because Fields was also charged with a second act of molestation unrelated to the alleged sexual intercourse.

"[W]hen two or more defendants are charged with different offenses, they may be tried jointly where the offenses were part of a common scheme or plan; and if a joint trial does not prevent or hinder a fair determination of each defendant's guilt, there is no abuse of discretion in denying severance." *Allen v. State*, 144 Ga. App. 233, 234 (2) (240 SE2d 754) (1977) applying *Padgett v. State*, 239 Ga. 556 (238 SE2d 92) (1977). There is clearly no abuse in denying severance where " 'the crimes alleged were part of a continuous transaction conducted over a relatively short time, and ". . . from the nature of the entire transaction, it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the other. . . ." ' [Cit.]" *Moore v. State*, 165 Ga. App. 65 (2) (299 SE2d 400) (1983).

Frazier and Fields were charged with committing the same acts, that is, sexual intercourse with the same victim in the same place at approximately the same time. Possibly the second act was even committed in the presence of the committer of the first act. It would have been almost impossible for the evidence regarding one act of intercourse to be introduced without evidence of the other.

The same analysis applies to the joinder for trial of the second charge against Fields which accused him of touching and fondling the victim's vagina. Although Frazier was not implicated in this charge, the act was part and parcel of the pattern of sexual abuse of the child during the school year in question. Indeed, the child's report of Fields' molestation by touching triggered the investigation which led to discovery of Frazier's molestation. Joinder was necessary in order to permit a comprehensive presentation of the State's evidence.

Denying severance and permitting joinder was not error.

4. Appellant contends that the court erred in denying his motion in limine to exclude testimony of fondling regarding the second charge against Fields and the victim's testimony relating to acts other than sexual intercourse. For the reasons discussed in Division 3, there was no error.

5. Appellant contends, without authority, that the court erred in denying his motion for the prosecution to make the victim available for questioning because it amounted to the State's holding or prohibiting access to a witness.

" ' "Accused and his counsel have the right to interview witnesses before the trial; and the state has no right to deny them access to a witness material to the defense, but a witness cannot be compelled to submit to such interview." ' [Cit.]" *Rutledge v. State*, 245 Ga. 768, 770 (2) (267 SE2d 199) (1980). "[W]hen the witness is a child, the

child's guardian may make this decision." *Dover v. State*, 250 Ga. 209, 212 (2) (296 SE2d 710) (1982).

The child had been under the supervision of DFACS since 1980. There is no evidence that the State instructed DFACS to refuse to permit questioning of the child. The court ordered the State to produce the videotapes for defense review and for the involved DFACS personnel to be accessible for defense interview. Under these circumstances, pretrial access to the child was not mandatory.

6. Appellant contends the trial court erred in denying a mistrial because the State failed to supply certain exculpatory material in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). The material was information from the victim's foster mother that the victim told lies and that in July 1987 the child and some other children took off their clothes and exhibited their bodies to each other.

Appellant made no showing that the information was in the State's file rather than in the possession of DFACS. If the material was not in the State's own file, it was not required to investigate the defendant's case for him. See *Hicks v. State*, 232 Ga. 393 (207 SE2d 30) (1974).

After examining the DFACS file, the court ordered its disclosure save for material relating to future foster placement of the child. It allowed defense counsel an opportunity to review the file and to interview the State's DFACS witnesses. The defense questioned DFACS worker Walden and psychologist Jordan to explore the alleged lying and the episode of nudity. Any earlier failure to disclose was not shown to have hampered the defense, and the refusal of a mistrial was not error.

7. Appellant contends that the use of the videotapes at trial denied the right to confrontation under the Federal Constitution, citing *Coy v. Iowa*, 487 U. S. ___ (108 SC 2798, 101 LE2d 857) (1988). The State constitution is not relied upon. See *Lee v. State*, 177 Ga. App. 698 (340 SE2d 658) (1986); *Davenport v. State*, 172 Ga. App. 848, 850 (2) (325 SE2d 173) (1984).

The admission of videotapes in child molestation cases is governed by OCGA § 24-3-16. See *Hunter v. State*, 194 Ga. App. 711 (391 SE2d 695) (1990). It does not infringe upon a defendant's Sixth Amendment right to confront witnesses. *Sosebee v. State*, supra. The child victim did testify pursuant to *Sosebee*. The constitutional challenge to the child hearsay statute has been reconsidered in light of *Coy* and found to be meritless. *Sosebee v. State*, 190 Ga. App. 746, 748 (2) (380 SE2d 464) (1989). See also *Ortiz v. State*, 188 Ga. App. 532, 533 (2) (374 SE2d 92) (1988) for a detailed discussion of the federal right to confrontation in a child molestation prosecution.

8. The next question is whether the court erred in admitting the

July 10 videotape without determining the child's competency. Appellant urges that the earlier tapes cast serious doubts on it.

Competency was to be resolved by the court, as the trial occurred before April 19, 1989, the effective date of OCGA § 24-9-5 (b). Prior to the State resting, the child was examined by all parties pursuant to OCGA § 24-3-16 and *Sosebee.* She was found to be "qualified."

" 'In *Smith v. State,* 247 Ga. 511, 511-12 (277 SE2d 53) (1981), the Supreme Court defined the standard of competency of a child to be a witness as being "not that he be able to define the meaning of an oath, nor that he understand the process under which the oath is administered, but rather that he know and appreciate the fact that as a witness he assumes a solemn and binding obligation to tell the truth relative to the case and concerning such matters as he may be interrogated on, and that if he violates the obligation he is subject to be punished by the court."

" 'Once a child's competency has been thoroughly tested in court, it is within the sound discretion of the trial court whether or not to rule the child competent to testify as a witness. [Cits.] Because the trial court has had the opportunity to observe the child during the competency examination and because such observation provides material indicia of competency (or the lack thereof) which this court cannot glean from a cold record, we will upset the ruling of competency only when the record clearly shows that the child was not competent as defined in *Smith v. State,* supra. [Cits.] A further reason for the hesitation of appellate courts to interfere with competency rulings is that the trial court's ruling as a matter of law that the child is competent [cits.] is followed by the jury's independent determination of the child's credibility as a matter of fact. [Cit.]' [Cit.]" *Westbrook v. State,* 186 Ga. App. 493 (1) (368 SE2d 131) (1988). See also *In the Interest of J. E. L.,* 189 Ga. App. 203, 204 (1) (375 SE2d 490) (1988).

The record, including the videotapes, demonstrates that there was no abuse of the court's discretion in finding the child qualified to testify. See *Sprayberry v. State,* 174 Ga. App. 574, 575-576 (1) (330 SE2d 731) (1985).

"Since the child was found to have been competent to testify at trial and had been made available for giving testimony at trial, the trial court did not err in admitting the videotape . . . about the victim's accounts of the alleged abuses. OCGA § 24-3-16. See *Newberry v. State,* 184 Ga. App. 356 (1) (361 SE2d 499) (1987)." *In the Interest of J. E. L.,* supra at 204 (1). See also *Fields,* supra.

9. Appellant's contention that the trial court erred in denying his amended motion for new trial, which was premised on the arguments raised in the appeal, is without merit.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 9, 1990 —
REHEARING DENIED MARCH 27, 1990 —

*Troy R. Millikan,* for appellant.

*C. Andrew Fuller, District Attorney, Lee Darragh, C. David Turk III, Assistant District Attorneys,* for appellee.