A10A0290. SCHAFF v. THE STATE.
(697 SE2d 305)

DOYLE, Judge.

Donald Schaff is charged with various crimes related to his alleged molestation of M. S., who is also his minor daughter. We granted his application for interlocutory appeal to review the trial court's order granting the State's motion to disqualify defense counsel, Kevin Gough, whom the court determined would be a necessary witness with regard to a videotaped recant of the victim.[1] For the following reasons, we reverse the disqualification order. Schaff also enumerates as error the trial court's order preventing him from interviewing the victim prior to trial, but we discern no error with regard to that enumeration.

The record before this Court establishes the following. When the trial court made the challenged rulings, jury selection had been completed,[2] and the court was presiding over argument of various pretrial motions, including Schaff's motion in limine to admit evidence of M. S.'s prior, allegedly false accusations of sexual abuse. Several witnesses proffered testimony concerning the statements allegedly made by M. S. when she was eight years old, including the victim and her mother (also Schaff's wife). M. S., however, testified that she did not independently remember the instances as testified to by her mother until after her mother had discussed them in her presence. Additionally, during M. S.'s proffer, it was elicited by the State that M. S. visited Gough's office on "three or four" occasions

---

[1] A copy of the video was not provided to this Court in the record on appeal.

[2] The jury had not been sworn. See *Pollard v. State*, 175 Ga. App. 269, 270 (333 SE2d 152) (1985) (jeopardy attaches after impaneled jury is sworn).

with her mother. M. S. testified that at one of the visits, she made a videotaped interview with Gough during which she recanted her allegations of abuse by Schaff. M. S. also recanted the allegations on the stand during the witness voir dire.

The prosecutor then entered into a line of questioning in which she asked M. S. when she "decide[d] that none of this happened." At the end of the exchange, the State, fearing that M. S.'s mother was improperly influencing her with regard to the case, asked the court to appoint a guardian ad litem for the child and/or for the Department of Family and Children Services ("DFACS") to determine whether continued placement with her mother was appropriate during the remainder of the proceedings. The trial court granted the State's oral motion, appointed a guardian ad litem for M. S., and placed her into DFACS custody.

The trial court then indicated that she would remove herself from the case and find another judge to preside over the trial, which was scheduled to begin two days later. The new judge instructed the parties to provide courtesy copies of any other pretrial motions by the morning of trial. Schaff filed a list of potential motions, including, among others, a motion to disqualify the assistant district attorney, a motion to withdraw as counsel, a motion for a continuance, and a motion for psychiatric evaluation of the victim, while the State filed a motion to disqualify Gough on the ground that he was a necessary witness.

On the morning of trial, Schaff elected to have the original trial judge rule on the motions because the new judge would not have access to the transcript from the previous hearing. Schaff also agreed to forego officially filing a motion to recuse the judge so that she could hear the motions. The trial court dismissed the jury, granted Schaff's motion for a continuance, and then turned to the State's disqualification motion.

After argument, the trial court granted the motion to disqualify Gough, reasoning that by conducting the interview of the victim, his role was similar to that of a forensic interviewer, and he would need to be available for the State to cross-examine. The court conceded that M. S.'s mother was present during the interview, and his assistant overheard the exchange; however, the court explained that normally, an interviewer is subject to examination regarding his training and experience, mental impressions of the child, and reasons for asking certain questions. Additionally, the trial court expressed concern about the mother's apparent "undue influence" over M. S. and her desire for "reunification of the family," which led the court to conclude that Gough's testimony would be necessary to determine the circumstances leading up to the recantation.

The trial court issued a certificate of immediate review, and this

Court granted Schaff's application for interlocutory appeal.

1. Schaff argues that the trial court erred by disqualifying Gough. We agree and reverse the trial court's disqualification order.

"The right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution."[3]

> Rule 3.7 (a) of the Rules of Professional Conduct of the State Bar of Georgia provides that, a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. The party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer is likely to be a necessary witness by demonstrating that the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to prove those facts.[4]

"In determining whether to disqualify counsel, the trial court should consider the particular facts of the case, balancing the need to ensure ethical conduct on the part of lawyers against the litigant's right to freely chosen counsel."[5] The trial court's decision is reviewed for an abuse of discretion.[6]

We hold that the trial court abused its discretion by disqualifying Gough on the basis that his testimony was necessary. The confusion concerning the necessity of Gough's testimony appears to stem from the requirements of the child hearsay statute, under which the videotape may be introduced at trial if the child does not testify[7] and which states:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to

---

[3] (Punctuation omitted.) *Clough v. Richelo*, 274 Ga. App. 129, 132 (1) (616 SE2d 888) (2005).

[4] (Punctuation omitted.) Id.

[5] (Punctuation omitted.) Id.

[6] See id.

[7] See *Hayes v. State*, 274 Ga. 875, 877 (2) (560 SE2d 656) (2002).

whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[8]

To determine whether sufficient indicia of reliability exist, a court

may consider [factors, including] but . . . not limited to the following: (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.[9]

As we conclude below, however, M. S.'s mother and Gough's assistant can testify to the circumstances surrounding the child's statement, and Gough's testimony is, therefore, not necessary for admission of the statement under this statute.[10] Although the court is correct that Gough's testimony regarding his training and experience, mental impressions of the child, reasons for asking certain questions, and the mother's actions or statements toward the child would be relevant to the jury for determining the weight and credibility to assign the child's videotaped recantation (and possibly the preferred method), his testimony is not *necessary* to prove any fact related to the video or the circumstances surrounding the video.

At the hearing on the matter, Gough stated that his assistant had provided the video equipment and prepared it for recording. Additionally, the assistant was sitting outside the office during the interview, and M. S.'s mother was present during the interview. Thus, as a person to whom the statement was made, her mother can

---

[8] OCGA § 24-3-16.

[9] *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991).

[10] The issue of whether sufficient indicia of reliability exist in order to admit the tape was not decided by the trial court and is not an issue currently before this Court. See *Rushin v. Ussery*, 298 Ga. App. 830, 837-838 (5) (681 SE2d 263) (2009) ("This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it.") (punctuation omitted).

verify the circumstances and contents of the tape.[11] Finally, Gough explained that at the time the video was made he had not spoken to the victim without her mother being present, so there are no facts related to the video which require Gough's testimony.[12]

The trial court expressed concern about M. S.'s mother and concluded that Gough's testimony would be necessary for explaining the circumstances surrounding the recantation, implying that Gough would be necessary to impeach the mother's testimony about influencing M. S. to recant. In *Clough v. Richelo*,[13] this Court explained that such speculation as to the content of an opposing counsel's testimony could not support a disqualification order.

> Otherwise, any party could successfully move to disqualify an opposing attorney by simply averring that the opposing attorney might possess information that is damaging to the attorney's client's case and, therefore, that the attorney is likely to be a necessary witness in the moving party's case. To approve of such a tactic would be opening the door to blatant misuse of a rule that already has great potential for abuse.[14]

The State will have ample opportunity to attack the credibility of the recantation by cross-examining M. S.'s mother to determine if she cajoled the child into changing her story. During argument, the State will also have the opportunity to attack the credibility of the recantation video by highlighting the potential pressure the child may have been under at its creation.

2. Schaff and Gough also argue that the trial court abused its discretion by forbidding Gough from contacting the victim. We disagree, as it does not appear from the record that the trial court

---

[11] See *Brown v. State*, 280 Ga. App. 884, 888 (3) (635 SE2d 240) (2006) (holding that the defendant failed to object to admission of the testimony, but in dicta reasoning that a child's recorded statements to a forensic interviewer would be admissible based on the testimony of an officer whom the child was aware was present during the interview). Compare *Clemmons v. State*, 282 Ga. App. 261, 262-263 (1) (638 SE2d 409) (2006) (reviewing admission of foster mother's testimony of boys' statements made to each other and holding that the plain language of the statute did not allow for the introduction the statements "merely overheard by another" and that the statements of the child-victim must be made to the witness testifying; it is unclear from the opinion whether the children were aware of the foster mother's presence); *Kelly v. State*, 197 Ga. App. 811, 814 (3) (399 SE2d 568) (1990) (holding harmless the admission of statements by an officer regarding the victim's statements that he merely observed over a monitor during the taping because the officer's testimony was cumulative).

[12] We note that, in any event, Schaff had a right for his attorney to speak to the victim. See, e.g., *Kelly v. State*, 197 Ga. App. at 813 (1).

[13] 274 Ga. App. at 135-136 (1) (b).

[14] Id. at 136, n. 7.

made any such ruling.

The exchange to which it appears Schaff refers occurred after the trial court questioned the victim during the hearing on Schaff's motion to admit evidence of prior false allegations. The victim discussed her prior recantation made in defense counsel's office, and she explained to the judge that her mother had taken her to the office three or four times during pretrial preparation. It was also discovered during the hearing that M. S. had been self-injuring, which disturbed the trial court. At the end of M. S.'s testimony, the State moved for the trial court "to appoint counsel for this child and . . . look into DFACS as to whether or not this child needs to continue to be in [the] environment. . . ." The trial court directed DFACS to take immediate custody of M. S. The following then transpired:

> THE COURT: Okay. Here's where I am. I'm going to recess this case. I'm going to appoint a [g]uardian [a]d [l]item for the child[,] and I do not want that child to leave this courthouse with the mother or her relatives. I want DFACS to take custody of her immediately. I want a [g]uardian appointed[,] and I am not going to put this child back in this home until this case is over and she is not under the influence of people who want to persuade her whether rightfully or wrongfully that she is lying. Bring the child in and get, call DFACS.
> MR. GOUGH: Your Honor —
> THE COURT: Now. Now call DFACS. *He is not to have any contact with her in any shape, form[,] or fashion.* Mr. Gough, I cannot believe that you brought an alleged victim to child molestation when you represent the Defendant, a girl of this age to your office to interview. I cannot believe you did that. . . .
> MR. GOUGH: Your Honor, can we approach off the record for a moment?
> THE COURT: Let me, let me explain something to you. I'm not going anywhere with this except to tell you that I'm concerned about it. You know, maybe my, maybe my view of what obligations [d]efendants [sic] have to their clients is different from yours[,] and I'm not saying that, that yours is, is unethical but I am telling you I'm concerned about it. Now, here is where I am. I don't know what the truth is. I've heard some things here that are very disturbing, very disturbing. But we do know this, we do know we have pornography here. We do, we do know that. Your own witnesses have brought pornography into the issue. Which, which says something about the facts that the State was

getting independently. I mean, I am gravely concerned about this. I have a self-mutilator who is still in the same home with the mother trying to convince rightfully or wrongly that, that she has made a mistake or that she is lying. I mean, I'm really concerned about it. I mean, it's like [the prosecutor] said, and I think [the prosecutor] has a point here, . . .

MR. GOUGH: Your Honor, may I speak?

THE COURT: *You tell me why I shouldn't restrict him from seeing this child. He is seeing her, isn't he?*

MR. GOUGH: No, Your Honor.

[THE STATE]: No, Judge. She's —

THE COURT: Well, she comes to your office, Mr. Gough. This child is brought to your office. You're representing this man.

MR. GOUGH: Your Honor, we can check times and dates but my client was either confined at Kings Bay Naval Base or across the country in South Dakota. Now, if the Court will allow me —

THE COURT: I, well, telephonically or otherwise, Mr. Gough?

MR. GOUGH: I'm sorry?

THE COURT: *Telephonically or otherwise[,] your client has had no contact with this girl?*

MR. GOUGH: Absolutely none. . . .[15]

At a later point in the hearing, the trial court explained to M. S. that she was being taken into DFACS custody, and the court told M. S. that she was "not to have any contact with any members of [her] family until . . . the case is over." Thus, it is clear from this discussion that the trial court's statement, read in context, simply prohibited Schaff, not his attorney, from contact with the victim, which was redundant to the conditions of his bond.[16] This Court has discovered no ruling by the trial court that restricted Gough's access to the victim in order to prepare for trial.[17] Accordingly, this

---

[15] (Emphasis supplied.)

[16] See *Clarke v. State*, 228 Ga. App. 219, 220 (1) (491 SE2d 450) (1997) ("When a defendant is charged with a violent crime against a specific victim, it is within the trial court's inherent powers to require that the defendant avoid any contact with the victim as a condition of remaining free pending trial. Such condition is not arbitrary or capricious; it is a reasonable response to the trial court's function of balancing the defendant's rights with the public's safety interests, while avoiding the intimidation of prosecuting witnesses.").

[17] To the extent that the alleged victim's current guardian ad litem may restrict access to the child, a minor's guardian may make such a decision for the victim. *Frazier v. State*, 195 Ga.

enumeration is without merit.

3. Finally, throughout his initial brief, Schaff characterizes as improper other orders or actions taken by the trial court, including the trial court's order removing the victim from her home and appointing to her a guardian ad litem, the trial court's sua sponte statements concerning her recusal from the case, and the trial court's "reassumption" of the case from the judge who offered to take over the trial. Moreover, in his reply brief, Schaff asks this Court to sua sponte order the case be reassigned to a new judge upon remand. We decline to do so. Schaff has not enumerated as error any of the above actions, although he spends numerous pages in both appellate briefs describing the events. This Court, however, is not required to address error that has not been enumerated as such (pretermitting whether this Court has jurisdiction over such issues in this interlocutory appeal).[18] In any event, we note that Schaff himself declined to have the new trial judge rule on the motions, including the motion to disqualify Gough as counsel, and instead chose for the original trial judge to do so. Accordingly, these arguments afford Schaff no relief.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 28, 2010.

*Bondurant, Mixson & Elmore, Michael B. Terry, Kevin R. Gough*, for appellant.

*Stephen D. Kelley, District Attorney, Jacquelyn L. Johnson, Assistant District Attorney*, for appellee.

*Garland, Samuel & Loeb, Donald F. Samuel*, amicus curiae.

---

App. 109, 111-112 (5) (393 SE2d 262) (1990).

[18] See *Tucker v. State*, 299 Ga. App. 278, 280 (2) (683 SE2d 356) (2009) ("[A]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors.") (punctuation omitted).