## A11A0859. LEWIS v. THE STATE.
### (718 SE2d 112)

BLACKWELL, Judge.

Crawford Lewis, a former superintendent of the DeKalb County School System, was charged with serious crimes involving, among other things, alleged corruption in the award and management of school construction contracts, and he hired Michael Brown, a lawyer with the firm Alston & Bird LLP, to defend him against these charges. On the motion of the prosecuting attorneys, the court below disqualified Brown and his firm from continuing to represent Lewis,

---

based on a finding that the firm has a conflict of interest because it also represents the employer of a witness for the State, albeit with respect to matters unrelated to both the witness and the prosecution. We granted a petition for interlocutory review to consider whether the court below abused its discretion when it disqualified Brown and his firm. Upon our review of the record, we find no proper basis for the disqualification, and for this reason, we reverse the order disqualifying Brown and Alston & Bird.

Lewis served as the superintendent of the DeKalb County School System between 2005 and 2010, and in March 2010, he hired Brown to represent him in connection with an ongoing criminal investigation of corruption in the school system. Two months later, a DeKalb County grand jury returned a 127-page indictment, charging Lewis and three others with multiple violations of the Racketeer Influenced and Corrupt Organizations Act, OCGA § 16-14-1 et seq., and other crimes involving corruption, including in the award and management of contracts for several school construction projects.[1] According to the indictment, Lewis and Patricia Reid, the chief operations officer of the school system, conspired to defraud the school system by, among other things,[2] manipulating the bidding process to award school construction contracts to contractors that would agree to use Reid's husband, an architect, as a subcontractor, a practice that, the State alleges, violates Georgia law governing the award of public works contracts, as well as school system regulations and policies concerning construction contracts.[3] The indictment alleges that these crimes were committed between October 2005 and March 2010.

Even before the grand jury returned its indictment, the school system apparently became aware of some problems and relieved Reid of her duties as chief operations officer in November 2009. At that time, the school system engaged Parsons Commercial Technology Group, Inc., a large engineering and construction firm with operations throughout the United States and overseas, to manage its ongoing school construction projects, which Reid previously had

---

[1] The indictment also charges Lewis with theft by taking, see OCGA § 16-8-2, and unlawfully accepting bribes, see OCGA § 16-10-2 (a) (2).

[2] In addition to the allegations about the manipulation of the bid and award process, the indictment alleges that Lewis, Reid and others defrauded the school system in other ways, including the disbursement of school funds to Reid's husband for work that he did not do, the solicitation and receipt of tickets to sporting events and concerts from school contractors, the sale of school vehicles to Lewis and Reid for substantially less than their fair market values, the use of school purchasing cards to rent hotel rooms for personal use, and the disbursement of school funds to pay unearned overtime to school employees who ran personal errands for Reid.

[3] The indictment also alleges that Lewis, Reid and others obstructed, and attempted to obstruct, the investigation of corruption in the DeKalb County School System.

managed. Barbara Colman, a Parsons employee, was assigned to work from the offices of the DeKalb County School System and manage these construction projects. On September 17, 2010, the State provided Lewis with a witness list, which identifies Colman as one of seventy-three individuals from whom the State might elicit testimony at the trial of this case.[4] Apparently around the same time, the State served a subpoena upon Colman to compel her appearance at trial.

When Colman learned that she might be called as a witness at trial, she contacted an in-house lawyer at Parsons, and the Parsons lawyer then contacted a lawyer in the Charlotte, North Carolina office of Alston & Bird. The law firm, it seems, for several years has represented Parsons in a variety of matters and still represents Parsons today. For instance, the firm has represented Parsons in matters concerning the construction of light rail lines in a state other than Georgia, the purchase and sale of assets in states other than Georgia, employment disputes, and bid protests in connection with emissions projects in Georgia. Nothing in the record gives us any cause to believe, however, that Alston & Bird has represented Parsons in any matter concerning Colman or the testimony that she might give at trial. To the contrary, Brown told the court below at the hearing on the motion to disqualify, no lawyer at the firm ever has "met with, spoken to, or interviewed" Colman, and no lawyer at the firm ever has undertaken any representation of Parsons concerning its work for the DeKalb County School System.

The Parsons lawyer asked the Alston & Bird lawyer in Charlotte whether the firm could represent Colman in connection with the subpoena and her testimony at the trial.[5] The Charlotte lawyer then contacted Brown, and after some deliberations and consultations, Alston & Bird declined to represent Colman and so informed Parsons.[6] In the course of these deliberations and consultations, Brown called one of the prosecuting attorneys in this case on September 27, 2010 and disclosed that Alston & Bird represents Parsons in other matters and that Parsons had asked Alston & Bird to represent Colman in connection with her testimony in this case.

On September 28, the State filed a motion to disqualify Brown

---

[4] Nothing in the witness list identifies Colman as an employee of Parsons. Instead, the witness list simply identifies her as "Barbara Colman, Witness (civilian)" and reports her address as the address of an office of the DeKalb County School System.

[5] The record does not give us any reason to think that the Alston & Bird lawyer in Charlotte received any confidential information from Parsons about Colman, her testimony in this case, or the work that Parsons has done for the DeKalb County School System in the course of his discussion with the Parsons lawyer.

[6] To the extent that the representation of both Parsons and Lewis might present a conflict of interest for Alston & Bird, Parsons waived the conflict.

and Alston & Bird from continuing to represent Lewis, and the court below convened a hearing on the motion on September 30. In its motion, the State described Colman as "a witness for the State [who] has previously given statements to the District Attorney's Office concerning the improprieties of the actions of Lewis and [Reid]," and at the hearing, a prosecuting attorney described her as "a key State witness," but the record contains no more detailed information about the nature or substance of the testimony that prosecutors anticipate Colman will give at trial. Regardless of the nature and substance of her testimony, the State reasoned in its motion and at the hearing that, because Colman is expected to testify about things of which she acquired knowledge as a Parsons employee, Colman and Parsons are indistinguishable and are, for ethical purposes, one and the same person. And because Parsons would appear at trial in the person of Colman as, in the words of a prosecuting attorney, "a key State witness," Parsons and Lewis are directly adverse, the State contended, and Alston & Bird would be put in the ethically untenable position at trial of either "cross-examining one client on behalf of another client or not cross-examining one client on behalf of another client." Invoking the usual rule that no lawyer can represent one client in a matter directly adverse to another, the State asserted that Brown and Alston & Bird were absolutely prohibited from simultaneously representing both Parsons and Lewis.

At the hearing, Lewis responded that, according to settled law, Colman and Parsons are distinct persons for ethical purposes, Alston & Bird never has represented Colman, and Brown does not face the prospect, therefore, of representing one client in a matter directly adverse to another or cross-examining one client on behalf of another. Moreover, Lewis argued, although Alston & Bird has an established relationship with Parsons, it does not represent, and never has represented, Parsons in any matter related to Colman or her work for the DeKalb County School System, and in any event, Parsons has waived any conflict that might arise from the simultaneous representation of Parsons and Lewis. Nothing about the relationship between Alston & Bird and Parsons, Lewis asserted, would tend to impair a thorough and sifting cross-examination of Colman at trial on behalf of Lewis. Lewis himself also testified at the hearing and said that he had discussed the conflict issue with Brown, that he understood the conflict issue, and that he waived any conflict presented by the firm's simultaneous representation of Parsons.

On October 1, the court below entered an order granting the motion of the State and disqualifying Brown and Alston & Bird from continuing to represent Lewis, concluding that the circumstances presented the firm with "an actual conflict [of interest] which undermines effective representation." In its order, the court accepted

that Colman would be a "key witness" and found that a thorough and sifting cross-examination of Colman might imperil the relationship between Alston & Bird and Parsons, a relationship that the court described as a "productive" and "successful" one. Given the desire of the law firm to continue to earn fees from this "productive" and "successful" relationship, and given the damage that the relationship might sustain as a result, Brown might be tempted at trial to forego a thorough and sifting cross-examination of Colman, the court below said, and the relationship between Alston & Bird and Parsons, therefore, was a practical impediment to Brown rendering effective assistance to Lewis at trial. The court concluded that "[such] a practical impediment to a thorough and sifting cross examination of a key State's witness . . . undermines the requisite effectiveness and demands removal."[7] In its order, the court did not mention Lewis's and Parsons's consent to the simultaneous representation. The court certified its order of disqualification for immediate review pursuant to OCGA § 5-6-34 (b), and Lewis timely filed a petition for interlocutory review, which we granted.

On appeal, Lewis argues that the disqualification of his counsel was an abuse of discretion because the record simply does not show that the relationship between Alston & Bird and Parsons is reasonably likely to impair a thorough and sifting cross-examination of Colman. The State, on the other hand, continues to press its theory that Colman and Parsons are one and the same, that Parsons (in the person of Colman) will be directly adverse to Lewis at trial, and that Alston & Bird, therefore, absolutely cannot represent Parsons and Lewis simultaneously. The State also defends the alternative reasoning of the court below, arguing that the record is sufficient to show, even absent any direct adversity between Parsons and Lewis, a real risk that the simultaneous representation would chill the vigor of any cross-examination of Colman and thereby impair Lewis's right to the effective assistance of counsel. We will address these arguments in turn, but we begin first with some fundamental principles that guide our consideration of this case.

1. The Sixth Amendment guarantees the right of the accused in a criminal prosecution "to have the Assistance of Counsel for his defen[s]e," and Article I, Section I, Paragraph XIV, of the Georgia Constitution likewise guarantees that "[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel." As the United States Supreme Court has ex-

---

[7] Nothing in the order suggests that the court accepted the argument of the State that Colman and Parsons are one and the same, that Parsons (in the person of Colman) is directly adverse to Lewis, and that Alston & Bird absolutely cannot, for that reason alone, simultaneously represent Parsons and Lewis.

plained, "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U. S. 140, 144 (II) (126 SC 2557, 165 LE2d 409) (2006); see also *Wheat v. United States*, 486 U. S. 153, 159 (II) (108 SC 1692, 100 LE2d 140) (1988) ("[T]he right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment. . . ."); *Powell v. Alabama*, 287 U. S. 45, 53 (53 SC 55, 77 LE 158) (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); *Registe v. State*, 287 Ga. 542, 544 (2) (697 SE2d 804) (2010) ("One element of the right to counsel in criminal prosecutions, as guaranteed by the Sixth Amendment . . . [and] the Georgia Constitution of 1983, is the right of a defendant who does not require appointed counsel to choose who will represent him."). Indeed, the right to select the counsel of choice is, the United States Supreme Court has said, "the root meaning of the constitutional guarantee" of the right to the assistance of counsel.[8] *Gonzalez-Lopez*, 548 U. S. at 147-148 (II).

The right to counsel of choice is not, however, absolute. *Wheat*, 486 U. S. at 159 (II) ("The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects."); see also *Gonzalez-Lopez*, 548 U. S. at 144 (II). Among the limitations of the right is the settled principle that "a defendant does not have a right to be represented by an attorney who is ethically prohibited from doing so, most commonly due to a conflict of interest."[9] *Registe*, 287 Ga. at 544 (2); see also *Wheat*, 486 U. S. at 160 (II); *United States v. Campbell*, 491 F3d 1306, 1310 (II) (11th Cir. 2007). Accordingly, the courts "must recognize a presumption in favor of [an accused's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict [of interests] but by a showing of a serious potential for conflict." *Wheat*, 486 U. S. at 164 (II).

In considering whether a lawyer is confronted with an actual or

---

[8] The right to select counsel of choice is a right of profound importance and great practical significance to an accused. In many respects, the selection of a particular lawyer will dictate the course of the proceedings to follow:

> Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial.

*Gonzalez-Lopez*, 548 U. S. at 150 (III). In other words, lawyers are not fungible, swapping one lawyer for another is not without great consequence, and the choice of a lawyer in some cases may effectively decide the outcome for the client.

[9] Other limitations of the right include that "a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." *Wheat*, 486 U. S. at 159 (II).

potential conflict of interest, we are guided by the ethical standards for lawyers set out in the Georgia Rules of Professional Conduct. See *Registe*, 287 Ga. at 544 (3). The standard most relevant to this appeal is found in Rule 1.7 (a), which provides that "[a] lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client . . . will materially and adversely affect the representation of the client." The commentary accompanying Rule 1.7 explains that, under Rule 1.7 (a), "a lawyer ordinarily may not act as advocate [directly] against a person the lawyer represents in some other matter, even if it is wholly unrelated."[10] Ga. R. Prof. Conduct 1.7, comment [3]. In addition, a lawyer ordinarily cannot represent a client when he "cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests." Ga. R. Prof. Conduct 1.7, comment [4]. Sometimes a conflict arising from the simultaneous representation of multiple clients can be cured by the consent of the clients.[11] Ga. R. Prof. Conduct 1.7 (b). Clients may not consent, however, to a conflict that "involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." Ga. R. Prof. Conduct 1.7 (c) (3). And in the context of a criminal prosecution, the courts have noted that the consent of the accused "does not always cure the problem," especially considering the independent interests of the judiciary " 'in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.' " *Registe*, 287 Ga. at 544 (2) (quoting *Wheat*, 486 U. S. at 160 (II)); see also *Gonzalez-Lopez*, 548 U. S. at 151-152 (IV) ("Nor may a defendant . . . demand that a court honor his waiver of conflict-free representation.").

Whether these ethical standards preclude a lawyer from representing an accused in a criminal prosecution is committed to the sound discretion of the trial court. *Registe*, 287 Ga. at 544 (2). That

---

[10] The commentary explains that this prohibition extends only to cases of direct adversity and does not preclude the "simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises." Ga. R. Prof. Conduct 1.7, comment [3]. Moreover, the commentary acknowledges that a lawyer may in some circumstances act as an advocate on behalf of one client directly against another: "For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation." Ga. R. Prof. Conduct 1.7, comment [8].

[11] Client consent to a conflict of interest arising from the simultaneous representation of multiple clients requires that the client consult with the lawyer, receive "reasonable and adequate information about the material risks of the representation" in writing, and have an opportunity to consult with independent counsel. Ga. R. Prof. Conduct 1.7 (b).

said, "the right of counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution." *Blumenfeld v. Borenstein*, 247 Ga. 406, 408 (276 SE2d 607) (1981); see also *Piedmont Hosp. v. Reddick*, 267 Ga. App. 68, 76 (7) (b) (599 SE2d 20) (2004); *Head v. CSX Transp.*, 259 Ga. App. 396, 398 (577 SE2d 12) (2003); *Ga. Baptist Health Care System v. Hanafi*, 253 Ga. App. 540, 541 (559 SE2d 746) (2002). Aside from the profound importance of the right to select counsel of choice and its constitutional status, there are practical reasons why courts approach a request to disqualify counsel of choice with such caution. First, as our Supreme Court has acknowledged, the disqualification of counsel of choice often leads to substantial practical difficulties, inevitably delaying the proceedings and working a unique hardship on the client whose lawyer has been disqualified, who "may suffer the loss of time and money in finding new counsel and may lose the benefit of [his] longtime counsel's specialized knowledge of [his circumstances]."[12] *Bernocchi v. Forcucci*, 279 Ga. 460, 462 (2) (614 SE2d 775) (2005) (citation and punctuation omitted). Second, the consequences of an erroneous deprivation of the right to select counsel of choice in criminal prosecutions are severe. Such an erroneous deprivation is a structural error, one that affects "the framework within which the trial proceeds," and it requires an appellate court to reverse any conviction that follows without any inquiry into harm or prejudice. See *Gonzalez-Lopez*, 548 U. S. at 148-150 (III). Finally, as our Court has noted, courts must cast a skeptical eye toward motions to disqualify counsel of choice because "parties often move for disqualification of opposing counsel for tactical reasons."[13] *Clough v. Richelo*, 274 Ga. App. 129, 132 (1) (616 SE2d 888) (2005); see also *Wheat*, 486 U. S. at 163 (II) ("Petitioner of course rightly points out that the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side; but trial courts are undoubtedly aware of this possibility, and must take it into

---

[12] The reference to "longtime counsel" might seem inapt in a case in which Lewis has been represented by Brown and his firm for less than a year. But Lewis retained Brown and his firm even before Lewis was indicted, and Brown has been at his side for the conclusion of the investigation that led to his indictment and the entirety of the criminal prosecution. And Brown and his firm have spent "hundreds of hours" preparing a defense of Lewis. We think it is quite possible that, in the course of this representation, Brown and his firm have acquired a "specialized knowledge" of their client and the operations of the school system that their client managed for five years, knowledge that is neither readily transferable nor easily replicated.

[13] By mentioning the possibility that motions for disqualifications may sometimes be driven by impure motives, we do not mean to suggest that the prosecuting attorneys in this case have any such motives. We have seen nothing in the record to cause us to think that these prosecuting attorneys have acted in bad faith.

consideration along with all of the other factors which inform this sort of a decision.'').

"Because of the right involved and the hardships brought about [by its deprivation], disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly." *Bernocchi*, 279 Ga. at 462 (2). And it is the burden of the party seeking to disqualify counsel to prove that the extraordinary remedy of disqualification is warranted. See *Hastings v. Courtland*, 197 Ga. App. 508, 509 (1) (398 SE2d 747) (1990). With these principles in mind, we turn now to the disqualification of Brown and his firm in this case.

2. We first consider the contention of the State that Parsons and Colman are one and the same, that Parsons will be directly adverse to Lewis at trial because Parsons (in the person of Colman) will be a "key witness" against him, and that the Rules of Professional Conduct absolutely prohibit a lawyer from representing one client in a matter directly adverse to another. As a general rule, a corporation and its employees are distinct persons in the contemplation of the law, see *Kilsheimer v. State*, 250 Ga. 549, 550 (299 SE2d 733) (1983) ("[T]he cardinal rule of corporate law is that the corporation possesses a legal existence separate and apart from that of its officers, employees, shareholders, and directors."), and the general rule appertains in the realm of attorney-client relationships. See *Addley v. Beizer*, 205 Ga. App. 714, 715 (1) (423 SE2d 398) (1992) ("One who serves as attorney for a corporation does not, by virtue of that fact, serve as attorney for the officers of the corporation in their personal capacity. . . ."); see also *Zielinski v. Clorox Co.*, 270 Ga. 38, 41 (2) (504 SE2d 683) (1998). The American Bar Association explains in the commentary accompanying its Model Rules of Professional Conduct, on which the Georgia Rules are based, that "[a] lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent. . . ." ABA Model R. Prof. Conduct 1.7, comment [34]; see also Restatement 3d of the Law Governing Lawyers § 96, comment (b) ("By representing the organization, a lawyer does not thereby also form a client-lawyer relationship with all or any individuals employed by it or who direct its operations or who have an ownership or other beneficial interest in it, such as its shareholders."). The commentary accompanying the Georgia Rules acknowledges as well that "constituents of an organizational client" are not themselves clients of the lawyer just because the lawyer communicates and deals with those constituents in their organizational capacity. Ga. R. Prof. Conduct 1.13, comment [2]. This principle also is reflected in the provision of the Georgia Rules that, "[i]n dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer

shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing." Ga. R. Prof. Conduct 1.13 (d).

Notwithstanding the usual rule that a corporation and its employees are distinct persons for the purposes of legal ethics, the State asserts that a departure from the usual rule is warranted in this case because, when Colman appears as a witness at trial, she will appear as a representative of Parsons and not on her own behalf. This argument seems to confuse the capacity in which Colman acquired personal knowledge of the facts about which she will testify and the capacity in which she will appear at trial. It may be true that Colman has knowledge of the matters about which she will testify by virtue of her employment with Parsons and her assignment by Parsons to work with the DeKalb County School System. But there is no reason to believe that, when Colman appears to testify at trial, she will do so on behalf of Parsons. In the first place, it was the prosecuting attorneys, not Parsons, who identified Colman as a witness for trial. Nothing in the record suggests that Parsons has any stake whatsoever, pecuniary or otherwise, in the outcome of the Lewis prosecution, such that its interests might be furthered by a representative appearing as a witness for the State, and nothing suggests that Parsons cares in the least whether any witness appears on its behalf at the trial. Moreover, although Colman presumably will be asked at trial to testify about matters of which she has knowledge by virtue of her work for Parsons, the fact remains that Colman will be asked to testify from her own personal knowledge, not the collective knowledge of her employer. The State fails to cite a single decision from any jurisdiction that supports its novel theory that Parsons and Colman are one and the same for ethical purposes, and our own research has turned up no such authority. Even if it might be appropriate in some case to treat an employer and its testifying employee as one and the same for purposes of a conflict analysis, we are unpersuaded that we should do so here, where the record shows nothing more than that the employee is likely to testify about subjects of which she has knowledge by virtue of her employment. That is not enough, we think, to disregard the settled distinction between employer and employee.[14]

---

[14] The argument of the State admits of no workable limits, and we worry that, if accepted, it would be the exception that swallows the usual rule that we distinguish between corporations and their constituents. For example, accepting the State's argument would suggest that a soft-drink bottling company and its employee, who witnesses the robbery of a convenience store while stocking a vending machine, are indistinct. Or that a municipality and its employee, who witnesses a traffic accident while driving a sanitation truck, are indistinct. Or that an apartment management firm and its employee, who discovers incriminating evidence while performing routine repairs in the apartment of a tenant, are indistinct. We fail

3. That Parsons and Colman are distinct persons for the purposes of our analysis, however, does not extinguish the possibility of conflict because, as the court below recognized, the interests of two clients can conflict, even when they are not directly adverse. The court below premised its disqualification of Brown and his firm on its findings that the relationship between Alston & Bird and Parsons is a "productive" and "successful" one, that Brown and his firm have a pecuniary interest in maintaining that relationship, that a thorough and sifting cross-examination of Colman, a Parsons employee, might imperil that relationship, and that the potential threat to the relationship might tempt Brown to cross-examine Colman less vigorously, thereby depriving Lewis of the effective assistance of counsel. If all these findings could be sustained, they likely would warrant the disqualification of Brown and his firm because it is well settled that a lawyer generally cannot represent a client "if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client . . . will materially and adversely affect the representation of the client." Ga. R. Prof. Conduct 1.7 (a); see generally *Registe*, 287 Ga. at 547 (3) (b); *Snapping Shoals Elec. Membership Corp. v. RLI Ins. Corp.*, 2006 U. S. Dist. LEXIS 45226 (N.D. Ga. 2006). But upon our review of the record, we do not think all these findings can be sustained. Accordingly, we must conclude that the court below abused its discretion when it disqualified Lewis's counsel of choice.

(a) We accept that the record supports the finding that a "productive" and "successful" relationship between Alston & Bird and Parsons exists, inasmuch as the law firm apparently has undertaken representations of Parsons in a number of matters, representations that presumably would not have been undertaken if both the law firm and Parsons did not find the relationship "productive" and "successful." And we accept that most every law firm has some interest in maintaining its "productive" and "successful" relationships with clients and continuing to receive fees for representing those clients. But the record tells us nothing about the financial significance of the relationship to Alston & Bird. The court below found that more than one lawyer, more than one practice group and more than one office of the law firm has done some amount of work for Parsons, but these facts seem rather unremarkable, considering that Alston & Bird is a law firm of approximately 800 lawyers, with numerous practice groups and multiple offices throughout the country. It might very well be that the relationship

---

to see a principled distinction between these fact patterns and the one presented here, and the State has pointed us to none.

between Alston & Bird and Parsons is so lucrative that the law firm could hardly afford to lose Parsons as a client, but it might also be that the work Alston & Bird is doing for Lewis is more lucrative than the work it has done, and the work it might reasonably expect to do in the future, for Parsons. We simply do not know because the record says nothing about these things. And for this reason, although we accept the findings that Alston & Bird and Parsons share a "productive" and "successful" relationship and that the firm has an interest in continuing to earn fees as a result of the relationship, we do not think these facts tell us much, if anything, about the extent to which a member of the firm might be tempted to forego vigorous representation of another client to preserve the relationship.

(b) More important, we see nothing in the record to sustain the finding that a thorough and sifting cross-examination of Colman is likely to imperil the relationship between Alston & Bird and Parsons. The court below did not explain the basis for this finding, but we can think of a few reasons why the court might have thought that a vigorous cross-examination of Colman had the potential to harm the relationship, and we will address each in turn. Perhaps the court below thought that Parsons might have some stake in the Lewis case. But there is no reason to believe that Parsons has any interest in the outcome of the Lewis prosecution, that it cares much about whether Lewis is convicted, or that it cares much about whether the prosecuting attorneys will prove successful in their efforts to elicit testimony from Colman that tends in some manner to incriminate Lewis. Parsons and Colman, after all, were retained not by the office of the prosecuting attorneys to help prepare this prosecution, but instead by the DeKalb County School System to help run its school construction program. Nothing in the record suggests that the school system has directed Parsons or Colman to help build a case against Lewis or that the working relationship between Parsons and the school system depends on the outcome of the prosecution.

Maybe the court below worried that a thorough and sifting cross-examination of Colman might tend to embarrass Parsons or to cast the soundness of its practices or the quality of its work in a poor light, but nothing in the record gives any cause for such worry. We know, and the court below knew, virtually nothing meaningful about the nature and substance of the testimony that Colman is expected to give at trial, because the record simply is silent about the nature and substance of her testimony. It is true, of course, that the prosecuting attorneys described Colman in the proceedings below as "a key State witness" and someone who has some knowledge "concerning the improprieties of the actions of Lewis and [Reid]," but the former description is nothing but a bald conclusion, and the latter description is entirely unremarkable, inasmuch as most of the

73 witnesses identified by the State, we presume, have some knowledge of some facts that concern the alleged improprieties of one or more of the defendants.[15] So, although the statement of a lawyer in his place as an officer of the court is entitled to some weight and may sometimes properly substitute for evidence, see *Cross v. Cook*, 147 Ga. App. 695, 696 (3) (250 SE2d 28) (1978), the generalized and conclusory statements in this case about the nature and substance of the testimony Colman will offer simply do not contain the kind of detail that would warrant a finding that her testimony will involve the practices of, or quality of work done by, Parsons. See *Carragher v. Harman*, 220 Ga. App. 690, 692 (1) (469 SE2d 443) (1996) (conclusory statements of counsel entitled to no weight); cf. *Rank v. Rank*, 287 Ga. 147, 149 (2) (695 SE2d 13) (2010) (statements of counsel entitled to weight, where counsel gave "detailed overviews" of the issues and case). Consequently, there is no basis for a finding that a vigorous cross-examination of Colman is likely to reflect negatively upon Parsons or its reputation in the construction industry.

Perhaps the court below worried that a vigorous cross-examination of Colman might embarrass her or otherwise be hurtful to her and that such a result would harm the relationship between Parsons and Alston & Bird. But an effective cross-examination does not necessarily require that the witness leave the stand humiliated or in tears. And because we know nothing about the substance and nature of the testimony that Colman is expected to give at trial, we have no reason to think that a thorough and sifting cross-examination of her would tend to cause any hurt feelings. We acknowledge that most people would not wish to be cross-examined by a lawyer about anything for any length of time, but we have no cause to conclude that Colman or Parsons might take offense at the

---

[15] Although a prosecuting attorney represented at oral argument in this Court that Colman would testify as an expert, the September 17 witness list does not identify Colman as an expert witness, and the list does explicitly identify another witness as an expert. Moreover, if Colman were to testify as an expert, we fail to understand how that would bolster the case for disqualification. We know that the prerogative of the State to choose even its fact witnesses sometimes must yield to the constitutional right of the accused to choose his counsel, at least when the testimony of a particular witness is not absolutely necessary and another witness can testify to the same facts. See, e.g., *Schaff v. State*, 304 Ga. App. 638, 640-642 (1) (697 SE2d 305) (2010) (reversing disqualification of counsel because, although the State identified counsel as a potential witness at trial, other witnesses were available to testify to the same facts). And in many respects, fact witnesses are not as readily interchangeable as experts because, unlike the class of potential fact witnesses, which is limited to those persons with personal knowledge of relevant past events and occurrences, the class of potential expert witnesses usually is not so limited. So, absent a showing that a particular expert is irreplaceable, some reasonable person might wonder if the prerogative of the State to choose its experts ought not yield to the right of the accused to choose his counsel when the expert of choice presents a conflict for the counsel of choice. This is not a question, however, that we decide today.

way in which Brown reasonably might be expected to cross-examine Colman at trial. Moreover, although the fact that Parsons inquired of Alston & Bird about its representation of Colman in connection with her testimony in this case might suggest that Parsons has some concern for her welfare and comfort, nothing in the record reflects whether Parsons secures counsel as a matter of course for its employees when they are called to testify, nothing speaks to the rank and status that Colman holds within the organization, and the fact remains that Parsons, when it became aware that Alston & Bird represents Lewis, gave its consent to the simultaneous representation, knowing that an Alston & Bird lawyer would likely cross-examine Colman at trial.

Finally, maybe the court below was concerned that Alston & Bird possesses information obtained in confidence from Parsons that might bear upon a cross-examination of Colman. The Georgia Rules of Professional Conduct require a lawyer generally to

> maintain in confidence all information gained in the professional relationship with a client, including information which the client has requested to be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client, unless the client consents after consultation.

Ga. R. Prof. Conduct 1.6 (a). In its representations of Parsons, Alston & Bird undoubtedly has acquired confidential information that, by virtue of its continuing obligations to Parsons, it cannot use or disclose for the benefit of another client. But nothing in the record suggests any meaningful likelihood that the confidential information that the firm has acquired in its representations of Parsons has any bearing upon a cross-examination of Colman. The record is undisputed that no Alston & Bird lawyer has represented Parsons in any matter that involved Colman or the work that Parsons has done for the DeKalb County School System. The possibility that Alston & Bird acquired confidential information from Parsons that might be of use in a cross-examination of Colman is purely conjectural, and conjecture is no reason to deprive Lewis of his counsel of choice. Cf. *Rescigno v. Vesali*, 306 Ga. App. 610, 613 (1) (703 SE2d 65) (2010) (that lawyer acquired general financial information from a former client, and now represents another client adverse to the former client, does not require disqualification in the absence of a reason to believe that confidential information acquired from the first client would be of use to the second); *Benson v. McNutt*, 289 Ga. App. 565, 566 (657 SE2d 639) (2008) (same); *Duvall v. Bledsoe*, 274 Ga. App. 256, 259-260 (617 SE2d 601) (2005) (same).

(c) Finally, we turn to the finding that Brown might be tempted to forego a thorough and sifting cross-examination of Colman to preserve the "productive" and "successful" relationship between Alston & Bird and Parsons. Because the existence of that relationship is undisputed, we suppose that there is *some* risk that a member of the firm might not wish to cross-examine a witness employed by Parsons as vigorously as a witness who is not. But the extent of that risk is absolutely unknowable from the record in this case. We know practically nothing about the pecuniary significance of the relationship between the law firm and Parsons, except that more than one lawyer in more than one office of a firm of approximately 800 lawyers has represented Parsons; we know nothing about the relationship between Colman and Parsons, except that she is an employee; we know nothing about the substance and nature of the testimony she is expected to give, except the conclusion of the prosecuting attorneys that she will be a "key" witness and has something incriminating to say; we know nothing about the extent to which her testimony relates to the work that Parsons has done for the DeKalb County School System, except that she presumably will testify about some facts of which she acquired knowledge in the course of that work; we know absolutely nothing about any interest that Parsons might have in the outcome of this prosecution or in the testimony that Colman is expected to give at trial; and we know nothing about the likelihood that Alston & Bird has any confidential information that might bear upon a cross-examination of Colman.

The record reveals merely that Alston & Bird has a relationship with Parsons. The remainder of the case for disqualification consists of one conjecture piled upon another. See *Cardinal Robotics v. Moody*, 287 Ga. 18, 22 (694 SE2d 346) (2010) ("bare assertion" of conflict is insufficient to sustain burden of showing basis for disqualification); *Dismuke v. C & S Trust Co.*, 261 Ga. 525, 527 (3) (407 SE2d 739) (1991) ("In the absence of any evidence supporting the bare assertion [of conflict], the trial court did not err in denying the motion to disqualify."); *Schaff v. State*, 304 Ga. App. 638, 642 (1) (697 SE2d 305) (2010) (speculation cannot support disqualification); *Life Care Centers of America v. Smith*, 298 Ga. App. 739, 745 (3) (681 SE2d 182) (2009) (absence of evidence of wrongdoing by counsel, "[b]eyond conclusory allegations," does not justify disqualification); *Duvall*, 274 Ga. App. at 260 ("bare assertion" of conflict insufficient to warrant disqualification); *Clough*, 274 Ga. App. at 135-136 (1) (b) (mere speculation is no basis for disqualification). We are aware of no criminal case in which a court deprived an accused of his counsel of choice based upon such speculation and conjecture, and we do not think the constitutional guarantee of the right to counsel of choice can be overcome so easily. The Georgia Rules of Professional Conduct

recognize that a disqualifying conflict exists only when there is a *"significant risk* that the lawyer's own interests or the lawyer's duties to another client . . . will materially and adversely affect the representation of the client," Ga. R. Prof. Conduct 1.7 (a) (emphasis supplied), and the record here shows nothing more than a bare possibility of conflicting interests, a far cry from a "significant risk." While the State may be able to present facts that would authorize the trial court to disqualify Brown and Alston & Bird, it has not done so yet, and the record now before us does not warrant disqualification. For these reasons, it was an abuse of the discretion of the court below to disqualify Brown and his firm.[16]

*Judgment reversed. Barnes, P. J., and Adams, J., concur.*

DECIDED OCTOBER 28, 2011 — ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Alston & Bird, Michael L. Brown, Bernard Taylor, Angela Adams*, for appellant.

*Robert D. James, Jr.*, District Attorney, *John S. Melvin, Deborah D. Wellborn, Michael S. Carlson*, Assistant District Attorneys, *Rhani M. Lott*, for appellee.

*Donald F. Samuel, George P. Donaldson III, J. Scott Key*, amici curiae.

---

[16] The State has filed a motion to strike certain documents, which were filed in the court below only after it decided the motion to disqualify, from the record on appeal. Lewis has filed a motion to supplement the record on appeal with additional documents filed in the court below after it decided the motion to disqualify, as well as a transcript of a hearing after the motion to disqualify was decided. We deny both motions. We note that our decision in this case is based exclusively upon the record before the court below at the time it disqualified Brown and his firm.