A11A1149. HARRIS et al. v. THE SOUTHERN CHRISTIAN
LEADERSHIP CONFERENCE, INC. et al.
(721 SE2d 906)

BARNES, Presiding Judge.

The Southern Christian Leadership Conference, Inc. ("SCLC"), its Board of Directors, and three individuals[1] (collectively, "SCLC") sued six former or current members of its Board of Directors[2] ("the Defendants"), seeking an order enjoining them from interfering with the SCLC's corporate governance or with its use and enjoyment of the corporate headquarters. The SCLC also sought a declaratory judgment identifying its board members and officers, alleging that the Defendants had breached their fiduciary duty to the corporation, and seeking the repayment of corporate money the Defendants used to pay legal fees in a previous lawsuit. The SCLC also sued Wachovia Bank, N.A., and Citizens Trust Bank, seeking an injunction directing that the SCLC accounts be controlled by the Board of Directors.

Following a lengthy hearing, the trial court issued a thoughtful, detailed, 37-page order granting a permanent injunction against the Defendants from interfering with the SCLC's governance, from interfering with the SCLC's use of its property and assets, and from holding themselves out as corporate officers unless they are re-elected, reinstated, or appointed by the Board. The court also declared the identity of the members of the Board of Directors as of June 1, 2010, and held that acts taken by that board and its successors in accordance with the SCLC's constitution and bylaws

---

[1] Sylvia Tucker, Randall Gaines, and Bernard Lafayette.

[2] Curtis W. Harris, Wilburt Shanklin, Randy Johnson, Raleigh Trammell, Spiver W. Gordon, and Markel Hutchins.

were binding on the corporation.

The trial court found that the bank accounts at Wachovia and Citizens Trust should be managed and controlled by the Board of Directors, and ordered the banks to lift any freezes on the accounts and to grant access to authorized representatives of the Board. The court then found that some of the Defendants breached their fiduciary duties to the SCLC by using corporate funds to pay for the previously-dismissed lawsuit, the institution of which was not approved by the Board of Directors, and entered judgment against three of the six Defendants for $12,240.

In a separate order, the trial court denied the Defendants' motion to disqualify the SCLC's attorney, their motion seeking a hearing on allegations of perjury, and the SCLC's motion to disqualify the Defendants' attorney. The Defendants enumerate seven errors on appeal, and for the reasons that follow, we affirm.

A permanent injunction is proper in "clear and urgent cases" to prevent a party from being damaged and left without an adequate legal remedy, and we review a trial court's grant of a permanent injunction for a manifest abuse of discretion. (Citation omitted.) *Smith v. DeKalb County*, 288 Ga. App. 574, 576 (2) (654 SE2d 469) (2007). We review issues of law de novo, applying the "plain legal error" standard of review. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000). In contrast, with respect to factual issues we construe the evidence in favor of the trial court's findings and affirm if there is any evidence to support them, regardless of whether the evidence would also support opposite findings. *Cannon Air Transport Svcs. v. Stevens Aviation*, 249 Ga. App. 514, 516 (2) (548 SE2d 485) (2001). Guided by these principles, we turn to the record in the present case.

This dispute arose after two factions emerged following a disagreement among the members of the SCLC's National Board of Directors ("Board Members").

The SCLC is a nonprofit corporation, to which "the fundamental rules and principles of law of profit and business corporations are equally applicable," unless otherwise specifically noted in the Georgia Nonprofit Corporation Code. *Shorter College v. Baptist Convention of Ga.*, 279 Ga. 466, 469 (1) (614 SE2d 37) (2005). A nonprofit corporation must have a board of directors, and "all corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board." OCGA § 14-3-801 (a), (b). A corporation's bylaws "may authorize a person or persons to exercise some or all of the powers which would otherwise be exercised by a board." OCGA § 14-3-801 (d).

The SCLC's constitution and bylaws define which of the corpo-

ration's members are entitled to vote during the annual meeting to elect a Board of Directors, whose members serve staggered three-year terms. The Board Members then elect national officers, and six of those officers, in addition to five more members appointed by the Chair, constitute the Executive Committee. The bylaws also provide that the Executive Committee may act for the Board of Directors. Both sides agree that the SCLC held its Annual Convention and properly elected 44 Board Members in August 2009, who then elected national officers, including an interim president. The trial court found that the Board Members met on October 29, 2009, to elect an incoming president.[3] During the meeting, allegations arose regarding sexual harassment claims against Board Member Raleigh Trammell, who had been elected Chair of the Board, and allegations of financial improprieties by both Trammell and Board Member Spiver Gordon, who had been elected Treasurer. Board Members called for an investigation, and an advisor to the Board recommended that Trammell and Gordon step aside as officers during the investigation.

The Board Members held several meetings in November 2009 to address the issue of Trammell and Gordon continuing to serve as the Chair and Treasurer while being investigated. During one meeting, a resolution was introduced seeking to remove the two men from their positions as officers until the investigation was completed, but it was apparently never put to a vote. Notice of a second meeting in November 2009 indicated that one purpose was to remove Trammell and Gordon from the Board of Directors until the investigation was complete. The Vice Chair testified that a quorum of the Board of Directors was present during the meeting, at which the Board Members voted to temporarily remove the two men from their positions as officers until the investigation was completed.

As the trial court put it, "[t]wo distinct factions [of the SCLC Board] developed in the November to December time frame." One faction included Gordon and Trammell, and the other faction included Tucker. Members of Gordon and Trammell's faction filed suit against members of Tucker's faction on December 28, 2009 ("the 2009 lawsuit"), alleging that those defendants had conducted meetings without notice, sought to remove and replace Board Members improperly, changed locks on SCLC property, and improperly handled SCLC bank accounts.

The trial court issued three temporary consent orders providing, among other things, that the SCLC's corporate structure would

---

[3] While the Board Members elected Bernice King as president, King ultimately did not accept the position.

remain as it was on October 29, 2009, with Trammell and Gordon serving as the Chair and Treasurer, respectively. In March 2010, the SCLC moved to intervene as a party, and in April 2010, the trial court granted the motion. The court ruled that the SCLC itself was an indispensable party, ordered it joined as a plaintiff, vacated all of its consent orders, held that all actions taken pursuant to those orders had no force or effect, and declared that the parties be returned to the status they held before entry of the now-void orders. Four days later, the 2009 lawsuit was dismissed. Three days after the dismissal, on April 19, 2010, the SCLC filed the petition for injunctive relief and a declaratory judgment that is before this court on appeal.

Between June 2 and July 2, 2010, the trial court heard 11 days of testimony by 27 witnesses. The hearing transcript is lengthy, and the exhibits included in the 30-volume record are voluminous. In its order, the trial court set out in great detail the evidence and contentions of the parties, as well as its findings and conclusions, which we will not reiterate in detail.

1. The Defendants contend that the trial court erred in finding that their meetings were not valid under the SCLC's constitution and bylaws, and that the actions taken at those meetings were void. The trial court carefully analyzed the facts and issues surrounding a December 2009 meeting, before the previous suit was filed, and concluded that the Defendants did not obtain the approval of the Board of Directors to file that suit. The court also determined that no quorum was present for a meeting on January 20, 2010, and thus any actions taken at that meeting were not actions of the Board. The court found that no notice was given for meetings of the purported Executive Committee on January 29, 2010, February 25, 2010, or March 7, 2010, which were chaired by Trammell and attended by Gordon, and thus actions taken during those meetings were void. Those void actions included attempts to reconstitute the Board of Directors by naming new members, a power specifically reserved to the Board and not allowed to be exercised by a committee. OCGA § 14-2-825 (d) (2). Accordingly, participants at those meetings could not have properly set the SCLC's spring board meeting in Eutaw, Alabama on April 20, 2010; therefore actions taken at that meeting were also void.

After a thorough review of the record, we find no error in the trial court's findings of fact and conclusions of law related to meetings conducted by the Defendants.

2. The Defendants contend that the trial court erred in finding that meetings held by the plaintiffs' faction of the SCLC Board of Directors on April 10, 2010, April 19, 2010, and June 1, 2010, were legal and in conformity with the SCLC's constitution and bylaws. The court also found that the April 20, 2010 spring board meeting in

Atlanta by the plaintiffs' faction was not properly noticed and that the May 11, 2010 meeting lacked a quorum, so any actions taken at those meetings were null and void. As noted earlier, we review the trial court's findings of fact to determine whether "any evidence" supports them, and we conclude that the evidence of record does so. We further find no error in the trial court's application of law to the facts.

3. The Defendants argue that even if the plaintiffs' meetings were proper, the removal of any Board Members during those meetings was improper. The trial court held that the meetings on April 10, 2010, April 19, 2010, and June 1, 2010, were held in accordance with Georgia law and the SCLC's constitution and bylaws, and under OCGA §§ 14-3-808 (removal of directors), 14-3-843 (resignation and removal of officers) and Article III, Section 6 of the SCLC's constitution and bylaws, the Board of Directors had the authority to remove and replace directors and officers. Therefore, the court concluded, the current SCLC directors and officers were "those individuals [who] were members of the Board who were elected at the August 2009 convention and who have not been removed by the actions of the Board of Directors at meetings this Court has held to be legally conducted." Finally, the court held that the current directors and officers also included the Board Members appointed at meetings held legal by the court, and named each Board Member. As with the previous two enumerations, some evidence of record supports the trial court's factual findings in this regard, and we find no error in its application of the law to the facts.

4. The Defendants argue that the trial court erred in finding that defendants Shanklin and Johnson breached their fiduciary duties to investigate allegations of monetary misuse and management regarding payments from SCLC funds to the Eutaw Prison Ministries. Based on the evidence in the record and cited by the trial court, it did not err in making this finding.

5. The Defendants assert that the trial court erred in finding that they breached their fiduciary duties by paying $12,240 from SCLC funds to the attorney who filed the 2009 lawsuit. As addressed earlier, the trial court did not err in finding that defendants Harris, Shanklin, and Johnson proceeded with the 2009 lawsuit without approval from the SCLC and thus breached their fiduciary duties to the corporation. It therefore follows that the court also did not err in granting the SCLC claim against Harris, Shanklin, and Johnson for $12,240.

6. After the main hearing ended, the Defendants moved the trial court to hold another hearing to consider "admissions of perjury," submitting a memo from SCLC executive director Ron Woods stating that the staff "did everything within the court of law to support Rev.

Tucker and all of the meetings/actions that were taken. In some cases violation of perjury may have taken place." The Defendants also submitted a letter from the SCLC's general counsel to Trammell and Gordon, written after the hearing, which stated that it "became painfully obvious [to general counsel] over this past year that certain persons seized this opportunity to hijack control of the organization."

In denying the motion seeking a hearing, the trial court held:

> Pursuant to OCGA § 16-10-70, perjury is a crime. The Court finds it inappropriate to initiate an investigation into whether or not perjury was committed in a civil hearing. Furthermore, the Court is not convinced by the arguments of, or by the exhibits submitted by Defendants that the Court was mistaken in the weight it gave to the evidence it found to be credible in making its ultimate decision.

The Defendants argue that the trial court erred as a matter of law in "refusing to consider [their] evidence of perjury" or "inquire into" the matter. Regardless of whether the trial court correctly found it "inappropriate to initiate an investigation into whether or not perjury was committed in a civil hearing," it is clear that the trial court considered Woods' memo and the general counsel letter submitted by the Defendants, as shown by the court's ruling quoted above. Further, we have reviewed those documents, and they provide no evidence of perjury. Rather, they are simply hearsay speculations containing no specifics about which witnesses might have committed perjury or what testimony might have been perjured.

Finally,

> to set aside a judgment obtained as a result of corrupt and wilful perjury, it must be shown that the persons charged with such perjury have been convicted thereof. OCGA § 17-1-4; *Arnold v. State*, 163 Ga. App. 10, 12 (1) (293 SE2d 501) (1982); *Marshall v. Russell*, 222 Ga. 490, 494 (2) (150 SE2d 667) (1966). There being no allegation of indictment and conviction of any of appellees who were witnesses in the libel and slander case and who allegedly testified falsely, the trial court did not err in dismissing appellant's claim seeking to set aside the judgment against him. Id.; see generally OCGA §§ 9-11-12 (b) (6), 12 (c) and 56 (c); *Wallis v. Clerk, Sup. Court*, 166 Ga. App. 775, 776 (305 SE2d 639) (1983).

*Sun v. Bush*, 179 Ga. App. 140, 141-142 (3) (345 SE2d 873) (1986).

While the appellants contend that *Sun* is inapplicable because it involved setting aside a judgment and they raised the perjury issue before the trial court entered judgment, the appellants presented no evidence that perjury occurred, only someone's speculation in a hearsay memo that some unspecified perjury might have occurred. This is not sufficient evidence to require the trial court to hold a factfinding hearing to uncover possible perjury.

Accordingly, we find no merit in this enumeration.

7. The Defendants assert that the trial court erred in "refusing to consider" their motion to disqualify the SCLC's attorney based on a nonwaivable conflict of interest.

Under Rule 1.7 (a) of the Code of Professional Conduct of the State Bar of Georgia, a lawyer shall not without consent represent a client if there is a significant risk that her duties to another client will materially and adversely affect her representation of the client. Under Rule 1.7 (c) (2), the client cannot waive the conflict if the lawyer is representing the opposing party in the same or substantially related proceedings. The Defendants argue on appeal that the SCLC's attorney had a conflict because he had previously represented Board Member Martin Luther King III and former President-Elect Bernice King in a separate matter, but never disclosed this prior representation to his clients even though Bernice King's proposed contract regarding the SCLC presidency "was soon to come before the Board." The appellants also argue that even if the attorney had disclosed the prior representation to the SCLC, the conflict was nonwaivable.

"[T]he right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution." *Blumenfeld v. Borenstein*, 247 Ga. 406, 408 (276 SE2d 607) (1981). In addition to the client's right to counsel, there are practical reasons to approach with caution a motion to disqualify, which if granted will "inevitably delay[ ] the proceedings and work[ ] a unique hardship on the client," who will lose time, money, and his previous counsel's knowledge of the situation if forced to obtain new counsel. *Lewis v. State*, 312 Ga. App. 275, 282 (1) (718 SE2d 112) (2011). Additionally, "courts must cast a skeptical eye toward motions to disqualify counsel of choice because parties often move for disqualification of opposing counsel for tactical reasons." (Citation and punctuation omitted.) Id.

In this case, the appellants sought a ruling on their motion to disqualify the appellees' attorney at the start of the hearing on the petition for an injunction and declaratory judgment. While they assert on appeal that the trial court erred in "refusing to consider" their motion, this assertion is simply inaccurate. Instead, the trial court stated that it would hear the evidence with regards to the

disqualification motion at the end of the hearing. The appellants sought to make a proffer of the testimony of the Kings, another witness, and a law professor, and the trial court noted that they had made a proffer via the professor's affidavit, and that it "ha[d] no problem letting you make whatever record you need to make" after hearing evidence on the main issues. The court further noted that if it disqualified the appellees' attorney first, it would not be able to hear and rule on the petition for a declaratory judgment and injunction. The result would be continued "chaos," because no one would be in charge and the banks would continue refusing to release the SCLC's money to pay its employees and "keep the lights on." The court wanted to consider the issue after hearing the evidence in the main claim seeking an injunction, noting that if it determined that the appellees were not the legitimate directors of the SCLC, then their counsel did not represent the SCLC and the conflict issue would be easy to resolve.

In the last two days of the hearing, the trial court asked the appellants repeatedly if they had any additional witnesses or evidence to present, and the answer repeatedly was no. The appellants closed without calling the previous clients of the SCLC's attorney or anyone else as witnesses regarding their motion to disqualify the attorney and without making a proffer of their testimony.

A party moving to disqualify counsel for an opposing party bears the burden of "showing that the matters embraced within the pending suit are substantially related to the matters or the cause of action involved in the previous representation." *Cardinal Robotics v. Moody*, 287 Ga. 18, 21 (694 SE2d 346) (2010). The appellants made no such showing here, but simply asserted that the appellees' attorney had previously represented the Kings in matters unrelated to the SCLC, that Bernice King's contract as President would soon come before the Board, and that therefore the attorney had an "unwaiveable" conflict of interest. The appellants made no showing that the interests of the SCLC and the Kings were directly adverse or otherwise sufficiently conflicting to "materially and adversely affect the representation of" the SCLC and warrant the attorney's disqualification, Rule 1.7 (a), and their counsel's conclusory statements are entitled to no weight. *Carragher v. Harman*, 220 Ga. App. 690, 692 (1) (469 SE2d 443) (1996).

While the appellants asserted after the hearing in an amended motion to disqualify that a memo from the SCLC Chair of the Board to the Board of Directors "vividly illustrated the reality of a conflict of interest in [appellees' counsel's] representation of the SCLC and the Board of Directors," the evidence presented with the motion was hearsay. Even if it were not hearsay, the memo criticizing then-President-Elect King's upcoming prayer vigil on behalf of the SCLC

does not even arguably establish that the SCLC and King were opposing parties.

The trial court held that the appellants did not meet their burden of "showing how the matters embraced by this case are substantially related to the matters involved in" previous litigation involving the Kings. After reviewing the testimony and other evidence, we find no error in the trial court's denial of the Defendants' motion to disqualify the SCLC's attorney.

*Judgment affirmed. Adams, J., concurs. Blackwell, J., concurs in judgment and in Divisions 1-6.*

DECIDED NOVEMBER 22, 2011 —
RECONSIDERATION DENIED DECEMBER 16, 2011 — 

*Thelma Wyatt Cummings Moore, M. Katherine Durant,* for appellants.

*Hasty Pope, Marion T. Pope, Jr., Charles A. Mathis, Jr., J. Christopher Simpson, Marian P. Johnson,* for appellees.