**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 1, 2013**

# In the Court of Appeals of Georgia

A13A0056. HODGE et al. v. URFA-SEXTON, LP et al.

RAY, Judge.

Appellants challenge the trial court's denial of their motion to disqualify appellees' counsel, Insley & Race, LLC. On appeal, appellants argue that the screening measures implemented by Insley & Race were are not allowed under Georgia law, or in the alternative, that the screening measures implemented were inadequate to protect against a conflict of interest that arose when it was discovered that a paralegal working for its counsel's firm had been formerly employed with appellants' counsel's firm. Finding no error, we affirm.

This action stems from the shooting death of Monica Renee Williams on January 3, 2010, at an apartment complex owned and operated by appellees. Appellants are Belinda Hodge, who is the administratix of Williams' estate, and

Williams' son, Tavarius NyQuan Williams. Shortly after Williams' death, appellants retained the law firm of Hanks Brookes, LLC, to pursue claims associated with Williams' death.

Kristi Bussey was employed as a paralegal by Hanks Brookes at the time of Williams' death and at the time the law firm was retained by Hodge. While working at Hanks Brookes, Bussey assisted in the investigation of Williams' death, communicated with appellants regarding the case, and participated in meetings regarding the case, including those discussing the investigation, counsel's thoughts regarding the case, and proposed strategy. Bussey even assisted Hodge in becoming appointed administratrix of Williams' estate and guardian of Williams' son. Additionally, Bussey has personally known Hodge for approximately 10 years and was friends with Williams and her son.

In March 2010, the law firm of Insley & Race, LLC, was retained by the Scottsdale Insurance Company to represent appellee URFA-Sexton, LP , in connection with the instant suit. Insley & Race then proceeded to conduct a pre-suit investigation and evaluation of the incident. On March 15, 2011, approximately one year after Insley & Race was retained and six months after the conclusion of the pre-suit investigation, Bussey interviewed for a paralegal position at Insley & Race. Prior

to hiring Bussey, the hiring partner at Insley & Race called and obtained an employment reference for Bussey from a partner at Hanks Brookes, who did not disclose any possible conflict of interest. At the time Bussey was hired and came to work at Insley & Race, she was not aware that the firm had been involved in a pre-suit investigation of the Williams matter. Accordingly, no screening measures were implemented to shield her from disclosing any knowledge she possessed regarding the case at that time.

On October 5, 2011, Bussey became aware of the conflict of interest and brought it to the attention of the partners at Insley & Race. Insley & Race then implemented screening measures, including restricting her access to the law firm's electronic file and the physical file and instructing her not to have any discussions regarding the case with anyone at the firm. Bussey provided affidavit testimony that she had never disclosed nor discussed any confidential information obtained about the Williams case during her employment with Hanks Brookes to any person at Insley & Race.

Appellants filed their complaint in this case on November 7, 2011. On December 6, 2011, two months after becoming aware of the conflict in interest, defense counsel disclosed Bussey's employment at their firm to Hanks Brookes. On

January 20, 2012, appellants filed a motion to disqualify defense counsel, arguing that Bussey's employment with defense counsel was a conflict of interest that required disqualification of the entire firm. On June 21, 2012, the trial court denied appellants' motion to disqualify defense counsel, finding that defense counsel had "implemented appropriate and effective screening measures to protect against any disclosure of confidential information." Appellants obtained a certificate of immediate review of that order and filed an application for interlocutory review in this Court, which was granted.

1. In their first enumeration of error, appellants assert that the Georgia Rules of Professional Conduct do not allow screening to overcome a clear conflict of interest, and thus, the trial court erred in denying their motion to disqualify defense counsel. We disagree.

On appeal, we review a trial court's ruling on a motion to disqualify counsel under an abuse of discretion standard. *Cardinal Robotics, Inc. v. Moody*, 287 Ga. 18, 22 (694 SE2d 346) (2010).

This Court has not previously addressed the standards governing a disqualification motion based on the hiring of a nonlawyer employee. With respect to lawyers, our Supreme Court has adopted a standard stating that a conflict of

4

interest arises whenever counsel undertakes representation of an interest that is adverse to that of a former client, as long as the matters embraced in the pending suit are "substantially related" to the factual matters involved in the previous suit. See *Crawford W. Long Mem. Hosp. of Emory Univ. v. Yerby*, 258 Ga. 720, 721 (1) (373 SE2d 749) (1988). See also Rules 1.9 and 1.10 of the Georgia Rules of Professional Conduct. This strict rule is based on conclusive presumption that confidences and secrets were imparted to the attorney during the prior representation and that such representation would "create[] an impermissible appearance of impropriety." See *Yerby* at 722 (3).

Appellants argue that the standards applied to disqualify lawyers should also apply to paralegals. Thus, appellants urge that the entire firm of Insley & Race should be automatically disqualified from the present case because of the confidences Bussey obtained while working at Hanks Brookes.

We agree that a paralegal who has actually worked on a case must be subject to the conclusive presumption that confidences and secrets were imparted during the course of the paralegal's work on the case. See *Phoenix Founders Inc. v. Marshall*, 887 S.W.2d 831, 834 (Tex. 1994). "This presumption serves to prevent the moving party from being forced to reveal the very confidences sought to be protected."

5

(Citation omitted.) Id. We disagree, however, with appellants' argument that paralegals should be subject to the same standards applicable to lawyers under the Georgia Rules of Professional Conduct, and therefore, they should conclusively be presumed to share confidential information with members of their firms. See Georgia Rule of Professional Conduct 1.10.[1] Rule 5.3 (a) of the Georgia Rules of Professional Conduct, governing responsibilities regarding nonlawyer assistants, requires a lawyer having direct supervisory authority over a nonlawyer to make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer. "Thus, to the extent that the [Georgia Rules of Professional Conduct] prohibit a lawyer from revealing confidential information . . . they also prohibit a supervising lawyer from ordering, encouraging, or permitting a nonlawyer to reveal such information." *Phoenix Founders, Inc.*, supra.

---

[1] Georgia Rule of Professional Conduct 1.9 (a) provides that a lawyer who has "formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client. . . ." Rule 1.10 (a) imputes that lawyer's disqualification to the entire firm, stating that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[] . . . 1.9."

6

Citing to the Alabama Rules of Professional Conduct and an advisory opinion, Alabama State Bar, Formal Opinion 2002-01,[2] the appellants urge us to adopt the approach endorsed by some jurisdictions, which prohibits using screening measures to prevent a nonlawyer's conflict of interest from disqualifying an entire firm. Appellants argue that Georgia has implicitly disapproved the use of screening measures because the Georgia Rules of Professional Conduct did not specifically adopt the screening measures set forth in American Bar Association Model Rules 1.10. However, we find this unpersuasive.

The American Bar Association's Committee on Professional Ethics has considered whether a law firm that hires a paralegal may continue representing clients whose interests conflict with interests of the former employer's clients on whose matters the paralegal has worked. ABA Comm. On Ethics and Professional Responsibility, Informal Op. 88-1526 (1988). After surveying case law and ethics opinions from a number of jurisdictions, the Committee concluded that the new firm need not be disqualified, as long as the firm and the paralegal strictly adhere to the

_____

[2] In its advisory opinion, the Alabama State Bar relied heavily on the fact that the Supreme Court of Alabama had taken the position that the "Chinese wall" or screening concept should not apply to practicing lawyers. See *Roberts v. Hutchins*, 572 So.2d 1231 (Ala. 1990).

screening process set forth in its opinion, and as long as the paralegal does not reveal any information relating to the former employer's clients to any person in the employing firm. Id. A number of courts have since relied on the ABA's opinion to allow continued representation under similar conditions. See *Smart Indus. Corp. v. Superior Court*, 179 Ariz. 141, 148 (C) (876 P.2d 1176) (1994); *In re Complex Asbestos Litigations v. Owens-Corning Fiberglass Corp.*, 232 Cal. App.3d 572, 595-596 (283 Cal. Rptr. 732) (1991).[3]

These decisions highlight a concern "regarding the mobility of paralegals and other nonlawyers. A potential employer might well be reluctant to hire a particular nonlawyer if doing so would automatically disqualify the entire firm from ongoing

---

[3] See also *Restatement (Third) of Law Governing Lawyers*, § 123, Comment (f) ("[e]ven if the [nonlawyer employee] learned the [confidential] information in circumstances that would disqualify a lawyer . . . the person should not be regarded as a lawyer for purposes of the imputation rules of this Section"). For more information regarding jurisdictions adopting this approach, see Peter H. Geraghty and Susan J. Michmerhuizen, *Screen Nonlawyer Employees For Conflicts of Interest*, American Bar Association, Your ABA, June 2012 e-newsletter; Cecile C. Edwards, *Law Firm Disqualification and NonLawyer Employees: A Proposal For A Consistent Analysis*, 26 Miss. C. L. Rev. 163, 167-176 (III)-(IV) (2007); M. Peter Moser, *Chinese Walls: A Means of Avoiding Law Firm Disqualification When a Personally Disqualified Lawyer Joins the Firm*, 3 Geo. J. Legal Ethics 399, 406-407 (1990).

litigation." *Phoenix Founders, Inc.*, supra at 835.[4] Weighing these concerns, the ABA concluded that screening a conflicted nonlawyer from the case was adequate, and that "any restrictions on the nonlawyer's employment should be held to the minimum necessary to protect confidentiality of client information." ABA Informal Op. 88-1526 at 2. Further, we note that Georgia has long held that

> [t]he right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution. Disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and inevitably causes delay. A client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and may lose the benefit of

---

[4] A rigid rule requiring that the hiring firm is automatically disqualified

raises important questions, not the least of which is the anomalous proposition that the more skilled a legal assistant or other employee becomes to the employer and the more information he or she acquires on cases in the firm, such assistant becomes *less* valuable to other firms with significant caseloads with the current employer . . . A literal reading of this rigid rule would stymie a legal assistant's career, or at the very least make them 'Typhoid Marys,' unemployable by firms practicing in specialized areas of the law where the employees are most skilled and experienced.

(Citation and punctuation omitted.) *Smart Indus. Corp*, supra at 148-149 (C).

9

its longtime counsel's specialized knowledge of its [case]. Because of the right involved and the hardships brought about, disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly.

(Citations and punctuation omitted.) *Bernocchi v. Forcucci*, 279 Ga. 460, 462 (2) (614 SE2d 775) (2005). Accord *Harris v. The Southern Christian Leadership Conference, Inc.,* 313 Ga. App. 363, 369 (7) (721 SE2d 906) (2011). These concerns, however, must be balanced against the concerns articulated by appellant, i. e., "the need to maintain ethical standards of professional responsibility" and the concern for "the preservation of public trust in the administration of justice and the integrity of the bar." (Citation omitted.) *Smart Indus. Corp.*, supra at 149 (C).

Using this balanced approach, this Court shares the concerns regarding the mobility of nonlawyer employees and the protection of a client's right to his choice of counsel expressed by the ABA and by the appellees. We agree that client confidences may be appropriately safeguarded if a firm hiring a paralegal from another firm takes appropriate steps to screen that paralegal in compliance with the screening measures adopted by the Georgia Rules of Professional Conduct in other contexts, namely in Rule 1.11, governing successive government and private employment, and Rule 1.12, governing former judges or arbitrators. Those screening

10

guidelines, set forth in Rule 1.0 (p), and Comments 8-10 to Rule 1.0, state that the disqualified person should not

> communicate with any of the other lawyers in the firm with respect to the matter. Similarly, other lawyers in the firm who are working on the matter should be informed that the screening is in place and that they may not communicate with the personally disqualified [employee] with respect to the matter. Additional screening measures that are appropriate for the particular matter will depend on the circumstances. To implement, reinforce and remind all affected lawyers of the presence of screening, it may be appropriate for the firm to undertake such procedures as a written undertaking by the screened [employee] to avoid any communication with other firm personnel and any contact with any firm files or other material relating to the matter, written notice and instructions to all other firm personnel forbidding any communication with the screened [employee] relating to the matter, denial of access by the screened [employee] to firm files or other materials relating to the matter and periodic reminders of the screen to the screened [employee] and all other firm personnel. In order to be effective, screening measures must be implemented as soon as practical after a lawyer or law firm knows or reasonably should know that there is a need for screening.

These precautions would tend to reduce any danger that the nonlawyer might share confidential information with members of the law firm. Therefore, the challenged firm may rebut any presumption that a nonlawyer shared confidential

information by showing that sufficient precautions have been taken to guard against any disclosure of confidences. See *Smart Ind. Corp.*, supra at 149-150.

However, we adopt the American Bar Association's precaution that these screening practices cannot be used to avoid disqualification in the following circumstances: (1) when information relating to the representation of an adverse client has in fact been disclosed, or (2) when screening would be ineffective or the nonlawyer necessarily would be required to work on the other side of a matter that is the same or substantially related to the matter on which the nonlawyer has worked. See ABA Op. 88-1526. Ordinarily, however, disqualification is not required so long as "the practical effect of formal screening has been achieved." *In re Complex Asbestos Litigation*, supra at 596.

2. Appellants argue that if Georgia allows screening measures to be implemented to avoid imputed disqualification arising from the change in employment by a nonlawyer employee, that the trial court erred in denying their motion to disqualify because Insley & Race did not institute screening measures in a timely manner. We disagree.

Bussey provided affidavit testimony that she began working at Insley & Race in March 2011, but that at the time of her hiring she was not aware that the firm was

involved in a pre-suit investigation of the Williams matter. Thus, no screening measures were implemented to shield her from knowledge of the case at the time of her hiring. On October 5, 2011, Bussey discovered the conflict of interest and brought it to the attention of the partners at Insley & Race, who implemented screening measures at that time. Those screening measures included restricting her access to the law firm's electronic file and the physical file, and instructing her not to have any discussions regarding the case with anyone at the firm. Bussey provided affidavit testimony that she had never disclosed nor discussed any confidential information obtained about the Williams case during her employment with Hanks Brookes to any person at Insley & Race.

Based on this evidence, the trial court concluded that the screening measures implemented by Insley & Race were adequate and that Bussey had not divulged any confidential information to the firm prior to the implementation of the screening measures. As stated above, we review a trial court's ruling on a motion to disqualify under an abuse of discretion standard. *Cardinal Robotics, Inc.*, supra. "The question on review is whether there is any evidence to support the trial court's finding of facts." *Southern Shipping Co. v. Oceans Intl. Corp.*, 174 Ga. App. 91, 94 (2) (329 SE2d 263) (1985). Having reviewed the record, we find that the trial court's findings

are not clearly erroneous. See *Daines v. Alcatel, S.A. Inc.*, 194 F.R.D. 678, 682-683 (II) (B) (E.D. Wash. 2000) (disqualification not required if firm provides "convincing evidence" that no confidential information passed before the institution of the screen and the subsequently erected screen is adequate).

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*