**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 26, 2020

# In the Court of Appeals of Georgia

A20A0443. DOXEY v. CRISSEY, et al.

RICKMAN, Judge.

Carolyn Doxey appeals the trial court's Order Granting Declaratory Judgment and Injunctive Relief, which permanently enjoined her from obstructing or interfering with the use of a bridle trail easement on her property. She contends that the trial court erred by considering parole evidence to determine the meaning of "bridle trail," finding that the purported bridle trail easement had not been abandoned, and restricting testimony of a fact witness. For reasons that follow, we vacate the judgment of the trial court and remand the case for proceedings consistent with this opinion.

"[W]e review a trial court's grant of a permanent injunction for a manifest abuse of discretion. We review issues of law de novo, applying the 'plain legal error' standard of review." *Harris v. S. Christian Leadership Conference*, 313 Ga. App. 363,

364 (721 SE2d 906) (2011). "[W]ith respect to factual issues we construe the evidence in favor of the trial court's findings and affirm if there is any evidence to support them, regardless of whether the evidence would also support opposite findings." Id.

So viewed, the evidence showed that in December 1970, Clem and Carolyn Doxey purchased Lot 28 in Section VI of the Oakton subdivision, and that their house is located on that lot. The warranty deed conveying Lot 28 to the Doxeys referenced a 10-foot wide bridle trail easement along the east property line. Clem Doxey subsequently purchased Lot 27 in Section IV of the Oakton subdivision, and the Doxeys built a tennis court on it. In November 1995, Clem Doxey conveyed both lots to Carolyn Doxey via warranty deed, which was made subject to all easements of record and referenced the 10-foot wide bridle trail easement along the east line of Lot 28 in the legal description of Lot 28. A recorded plat of Section VI of the Oakton subdivision, which is referenced in the legal description of Lot 28 in the November 1995 warranty deed, shows a 10-foot bridle trail easement along the east property line of Lot 28. In 1998, a plat was recorded showing the movement of the bridle trail easement from the east side of Lot 28 to the east side of Lot 27. Neither party has challenged the relocation of the easement.

Lots 27 and 28 of the Oakton subdivision back up to Kennesaw Mountain National Park and the bridle trail easement connects the street in front of the Doxey property to the park. One of the trails in the park is approximately two to three feet from Doxey's back property line. Evidence was presented that some residents of the Oakton subdivision initially used the easement on Lot 28 to gain pedestrian access to the park, and later used the easement on Lot 27 for the same purpose. The only evidence of a horse using the easement came from Carolyn Doxey, who testified that in the early 1970s she saw a girl riding a horse on it.

In the early 2000s, Doxey extended a fence that ran between the back of Lot 28 and the park to cover the back of Lot 27. Initially, there was an approximately 3-foot wide gate that allowed continued pedestrian access to the park from the Doxey property. At some point between 2002 and 2004, that gate was nailed shut and then removed, precluding access to the park from the Doxey property.

In 2018, ten residents of the Oakton subdivision brought an action against Carolyn Doxey for declaratory judgment and injunctive relief, seeking to permanently enjoin Doxey from obstructing or interfering with the easements on Lots 27 and 28 of the Oakton subdivision and to require Doxey to remove the fences blocking those easements. After a bench trial, the trial court determined that the plaintiffs had the right

3

to enforce the easement on Lot 27 and declared that all residents of all sections of the Oakton subdivision had the right to continued unobstructed use of that easement as pedestrians or equestrians. The trial court permanently enjoined Doxey from obstructing or interfering with the residents' use of the easement, and ordered her to remove the fence blocking the easement.[1]

1. Doxey contends that the trial court erred by considering parole evidence to determine the meaning of the term "bridle trail." We agree.

(a) An easement created by a subdivision plat is considered "an easement by express grant." (Citation and punctuation omitted.) *Zywiciel v. Historic Westside Vill. Partners*, 313 Ga. App. 397, 399 (1) (721 SE2d 617) (2011). "In interpreting an express easement, the rules of contract construction apply. The construction of a contract is a question of law for the court. The cardinal rule of construction is to ascertain the parties' intent. Parol evidence may not be considered unless the written instrument is ambiguous." (Citations omitted.) *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1) (467 SE2d 510) (1996).

> A contract is ambiguous if the words used therein leave the intent of the parties in question—i.e., that intent is uncertain, unclear, or is open to

---

[1] After Doxey filed her notice of appeal, this Court granted her motion for supersedeas and stayed the trial court's order pending appeal.

various interpretations. On the other hand, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.

(Citation and punctuation omitted.) *Bowers v. Today's Bank*, 347 Ga. App. 615, 618 (1) (820 SE2d 459) (2018). Dictionaries may be used to supply the plain and ordinary sense of a word. *Mkt. Place Shopping Ctr. v. Basic Bus. Alternatives*, 213 Ga. App. 722, 722 (1) (445 SE2d 824) (1994).

The portions of the recorded plats and deeds evidencing the easement on the Doxey property are clearly labeled, "bridle trail easement." The plain and ordinary meaning of bridle trail or bridle path is "a trail for horseback riding." *The American Heritage Dictionary*, 5th ed. (2020). See also *Merriam-Webster Online Dictionary* (2020) (defining bridle path as "a trail suitable for horseback riding"). The term is not susceptible to any other reasonable interpretation. Accordingly, we conclude that the unambiguous term "bridle trail" means that the easement is for the purpose of providing a trail for horseback riding. The fact that the path or trail may also be suitable for other uses does not render the term "bridle trail" ambiguous.

(b) Although the easement was designated for use as a bridle trail, a change in "the manner, frequency, and intensity of use" of the easement within the physical

boundaries of the existing easement is permitted without the consent of the other party, so long as the change is not so substantial as to "cause unreasonable damage to the servient estate or unreasonably interfere with its enjoyment." (Citations and punctuation omitted.) *Parris Properties, LLC v. Nichols*, 305 Ga. App. 734, 739 (1) (b) (700 SE2d 848) (2010). Under this principle, the transition of the easement from an access trail to the park for horseback riding to one for walking and running is consistent with a change in the "manner, frequency, and intensity of use" and would be permitted without Doxey's consent, so long as the change does not cause unreasonable damage to Doxey's property or unreasonably interfere with her enjoyment of her property. The trial court did not consider the potential impact of this change in use and we therefore remand for further proceedings on that issue.[2]

2. Doxey contends that the trial court erred by finding that the bridle trail easement had not been abandoned by nonuse.

---

[2] If the trial court concludes that the easement will not cause such damage or interference, the court is also instructed to consider and make clear who is entitled to access to the easement based on a reference to the easement in a recorded plat or deed by which they took title to their property or in a recorded deed or plat in their chain of title. See *Hendley v. Overstreet*, 253 Ga. 136, 136-137 (318 SE2d 54) (1984). The two sentences of paragraph 33 of the trial court's order are arguably inconsistent on this issue.

As a general rule, "[a]n easement may be lost by abandonment or forfeited by nonuse if the abandonment or nonuse continues for a term sufficient to raise the presumption of release or abandonment." OCGA § 44-9-6. But where an easement of way has been acquired by grant, "mere nonuser[3] without further evidence of an intent to abandon such easement will not constitute an abandonment." *Hardigree v. Hardigree*, 244 Ga. 830, 831 (2) (262 SE2d 127) (1979). Instead, the evidence of an intent to abandon must be clear, unequivocal, and decisive. *905 Bernina Ave. Coop. v. Smith/Burns LLC*, 342 Ga. App. 358, 371 (4) (802 SE2d 373) (2017).

Evidence was presented that some residents of Oakton initially used the easement on Lot 28 to gain pedestrian access to the park, and later used the easement on Lot 27 for the same purpose. In addition, some residents continued to use the easement on Lot 27 until Doxey blocked access to the park. Under the circumstances, the trial court did not err in concluding that the easement had not been abandoned. See *Houston v. Flory*, 329 Ga. App. 882, 889 (2) (766 SE2d 227) (2014).

3. Doxey contends that the trial court erred in restricting the testimony of her prior counsel.

---

[3] Black's defines "nonuser" as "neglect or omission to use an easement or other right." Black's Law Dictionary (6th ed. 1990).

The testimony excluded by the trial court relates to the development of separate neighborhoods and the use of separate covenants for each neighborhood. Pretermitting whether the trial court's ruling was improper, there was no harm. The excluded testimony related to Sections 1 and 1B of the subdivision, which were not at issue here. In addition, the witness was later allowed to testify about the fact that Oakton was divided into sections, that each section had its own set of covenants, and that those covenants were recorded on separate documents. Accordingly, this contention lacks merit. See generally *Sweat v. Sweat*, 281 Ga. 543, 545 (2) (641 SE2d 1) (2007) (to have reversible error, there must be harm as well as error).

*Judgment vacated and case remanded. Dillard, P. J., and Brown, J., concur.*